278 F.2d 301
 MICKEL-HOPKINS, INC., Appellant,
v.
Jordan J. FRASSINETTI, Trustee in Bankruptcy of the estate of James Harold Coble, Trading and Doing Business as Harold's (Restaurant), Bankrupt, Appellee.
 No. 8037.
 United States Court of Appeals Fourth Circuit.
 Argued March 18, 1960.
 Decided April 28, 1960.
 
 Charles E. Roth, Greensboro, N. C. (Falk, Carruthers & Roth, Greensboro, N. C., on brief), for appellant.
 William L. Osteen, Greensboro, N. C. (Booth & Osteen, Greensboro, N. C., on brief), for appellee.
 Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and BUTLER, District Judge.
 SOBELOFF, Chief Judge.
 
 
 1
 The issue here is whether a purported conditional sales contract validly created the lien asserted by appellant, Mickel-Hopkins Company, Inc., against personal property in the possession of James Harold Coble at the time of his adjudication as a bankrupt.
 
 
 2
 The background of the controversy may be briefly stated. In November, 1957, Coble opened a new restaurant in Greensboro, North Carolina. Substantially all the restaurant fixtures and equipment was purchased from Mickel-Hopkins Company, Inc., for an amount in excess of $63,000.00, the down payment being $10,000.00. The transaction was evidenced by an instrument dated November 25, 1957, and recorded on November 26, 1957.
 
 
 3
 The instrument was on a printed conditional sales form commonly used by Mickel-Hopkins. However, since the blank space provided for the description of the merchandise was inadequate, a list was typed on the blank portions of several such printed forms. All the forms were then cut with scissors, and the fragments pieced together with scotch tape, making one document. In the process, several lines of the printed contract form containing express provisions about the retention of title in the seller, which appeared immediately below the blank space provided for the description, were inadvertently covered over. As signed and recorded in the Registry of Deeds of Guilford County, North Carolina, the document contained the parties' names, a full description of the property covered, and the terms of sale, reciting that:
 
 
 4
 "The said purchaser acknowledges the receipt of the above described property and agrees in consideration of the delivery thereof to pay the seller the sum of $5,000.00 cash and $5,000.00 to be paid as agreed as a down payment and $1,439.04 on the 25th day of each and every month from the date hereof for a period of 12 months, at which time the entire balance of $53,652.51 will be due and payable."
 
 
 5
 In the concluding sentence, the paper characterized itself as a "conditional contract" in the following words:
 
 
 6
 "It is agreed that of the said monthly payments, $1,166.16 is to be applied to the principal sum due on this conditional contract, and the balance of $272.88 is to be applied to carrying charges on the purchase price." (Emphasis supplied.)
 
 
 7
 In the Guilford County Registry both chattel mortgages and conditional sales are listed in the Chattel Mortgage Indexes. The name of the mortgagor or buyer is entered in the grantor index, that of the mortgagee or seller in the grantee index. No separate index is provided for bills of sale, which are recorded only occasionally. When a bill of sale is presented for recordation, it is also listed in the Chattel Mortgage Indexes, along with the notation "bill of sale," and the seller's name is entered in the grantor index and that of the buyer in the grantee index. In the instant case, the instrument was recorded and indexed as a conditional sales contract. Accordingly, Coble and his wife were designated as the grantors, and Mickel-Hopkins as the grantee.
 
 
 8
 On April 2, 1959, Coble filed a voluntary petition in bankruptcy, listing his debt to Mickel-Hopkins Company, Inc., as one secured by a chattel mortgage. He was adjudicated a bankrupt on the same day. There was, at the time, owing to Mickel-Hopkins an unpaid balance of approximately $48,000.00 on the restaurant fixtures and equipment. The Company consented to a sale of the property by the trustee in bankruptcy but claimed a lien on the proceeds.
 
 
 9
 Affirming findings and conclusions of the Referee in Bankruptcy, the District Court held, [177 F.Supp. 281] "that the instrument as recorded does not constitute a conditional sales contract or security of any kind" and "that the trustee in bankruptcy is entitled to the property free of any claims by reason of the execution of said instrument." The court emphasized that there was neither a reservation of title in the seller, express or implied, nor a provision for the passage of title upon the performance of any condition by the buyer. Furthermore, in the words of the District Court:
 
 
 10
 "The instrument is one of absolute sale upon its face. In that shape it was spread upon the public record for the public to see."
 
 
 11
 On this appeal we must scrutinize this statement of the court. It cannot be seriously questioned that Mickel-Hopkins and Coble did not intend the instrument to be one of absolute sale. As already stated, in his schedule in bankruptcy, Coble listed his debt to Mickel-Hopkins as secured by a chattel mortgage on the restaurant fixtures and equipment. The evidence is clear that, for its part, Mickel-Hopkins treated the transaction throughout as a conditional sale.
 
 
 12
 The District Court was, of course, correct in noting that:
 
 
 13
 "The trustee in bankruptcy occupies the position of a creditor with a perfected lien as of the date of the bankruptcy. Sec. 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c; M. & J. Finance Corp. v. Hodges, 1949, 230 N.C. 580, 55 S.E.2d 201."
 
 
 14
 The question is whether the intentions of the parties may be given effect in the circumstances. More precisely, was the instrument as recorded sufficient under North Carolina law[1] to put an interested person on notice of the conditional sales contract unquestionably intended by the parties, but not expressed in conventional terms? We answer in the affirmative.
 
 
 15
 Preliminarily, it is to be noted that there is no showing that anyone was actually harmed or misled by the irregularity or mistake in this case. It would thus be quite inequitable to deprive Mickel-Hopkins of its lien, and the North Carolina law does not require us to do so.
 
 
 16
 In a number of cases the Supreme Court of that state has evidenced its view that perfect accuracy of the record is not required, provided there is enough to put a prudent examiner upon further inquiry. In Johnson Cotton Company v. Hobgood, 1955, 243 N.C. 227, 90 S.E. 2d 541, 544, the names of the parties to a chattel mortgage were correctly entered in the grantor and grantee indexes, but the book and page on which the instrument was recorded were incorrectly noted. Two days after the mortgage was transcribed on the records, the error in the grantee index was discovered and corrected, but the error in the grantor index was not found. The court nevertheless held that "the indexing was sufficient to put a careful and prudent examiner upon inquiry."
 
 
 17
 Again, North Carolina's Supreme Court has indicated that a prudent examiner will in certain circumstances not be permitted to limit his investigation to the record itself, but will be required to refer to sources outside of the record. In Massachusetts Bonding & Ins. Co. v. Knox, 1942, 220 N.C. 725, 18 S.E.2d 436, 439, 138 A.L.R. 1438, notice of a proceeding to foreclose a deed of trust had not been filed, as it should have been, in the lis pendens docket, although the deed itself was on record. The court first observed that:
 
 
 18
 "Under our registration law, C.S. § 3309, the object of registration is to give notice and when an instrument is registered it is sufficient to put a careful and prudent examiner upon inquiry. The record is notice of all matters which would be discovered by reasonable inquiry." (Emphasis supplied.)
 
 
 19
 It then held that by reasonable inquiry a prudent examiner would have discovered that the deed of trust was being foreclosed, since information about the foreclosure "was readily available either from the civil issue docket or from the trustee in the deed of trust." (Emphasis supplied.)
 
 
 20
 See, in addition, Harper v. Edwards, 1894, 115 N.C. 246, 20 S.E. 392, 393, in which the court held that "under the general rule, `a reference in a mortgage to a note secured by it, without specifying its contents, is sufficient to put subsequent purchasers upon inquiry, and to charge them with notice.'" The Harper decision was followed in Allen v. Stainback, 1923, 186 N.C. 75, 118 S.E. 903.
 
 
 21
 Also in point is Haas v. Rendleman, 4 Cir., 1933, 62 F.2d 701, 702, decided in this court under North Carolina law. There a deed of trust given by a bankrupt corporation was regular in form and had been recorded, but the corporate seal had been omitted inadvertently. Judge Parker, speaking for the court, pointed out that "under the law of North Carolina it is essential to the conveyance of land that the deed of conveyance be under seal." Though the instrument was therefore ineffectual as a deed of trust, it was nevertheless upheld against the trustee in bankruptcy as a contract to convey or an equitable lien.
 
 
 22
 In the case before us, we think a prudent examiner would have been put on inquiry by the record and could have ascertained that the instrument was a conditional sales contract. To begin with, the indexing was consistent only with a conditional sale or chattel mortgage. Though bills of sale are occasionally found in the Chattel Mortgage Indexes, as previously stated, the notation "bill of sale" always appears alongside the entry. Such notation was not made here and, consistent with the treatment of the instrument as a conditional contract of sale, Mickel-Hopkins, the seller, was listed as grantee, and the Cobles, the buyers, as grantors. If the instrument were looked at as a bill of sale, the seller would have been entered as grantor, the buyers as grantees. It is true that one examining the indexes could not immediately recognize whether the person appearing as grantor was a seller of property or a purchaser giving a lien, but when the examiner went to the instrument itself, he would inevitably have learned the respective roles of the parties.
 
 
 23
 The District Court correctly observed that:
 
 
 24
 "The indexing is done in the office of the Register of Deeds as a routine matter, and there is no attempt to make a judicial determination of what the instrument is." [177 F. Supp. 277.]
 
 
 25
 Nevertheless, having checked the indexes and noted that the paper was not designated a bill of sale (as required by the practice, if it indeed were a bill of sale), our prudent examiner would have expected to find either a chattel mortgage or conditional sales contract. There is no denying that, reading the document, he would have wondered about the absence of a provision reserving title in the seller. The examiner would have noted, however, the language of the instrument styling itself "this conditional contract." It could not have escaped his notice that the recorded paper recited the amount of the down payment as well as the unpaid balance due the seller, and the amount of the monthly installments due. These features, strongly suggestive of a secured transaction, would ordinarily not be found in a bill of sale. Furthermore, the person looking at the record would have observed that the instrument was neither acknowledged in behalf of the seller nor accompanied by the oath of a subscribing witness to its execution on behalf of the seller; and he would have known that if the instrument were a bill of sale, it could not be recorded without such an acknowledgment or oath.[2]
 
 
 26
 In light of these circumstances, the inspector of the records could hardly have been deceived into thinking the instrument a bill of sale. If, despite these warning signs, he were still unsure of the nature of the instrument, he would have been called upon to make a reasonable inquiry. In the words of the North Carolina court, "It is well settled that, if anything appears to a party calculated to attract attention or stimulate inquiry, the person is affected with knowledge of all that the inquiry would have disclosed." West v. Jackson, 1930, 198 N.C. 693, 153 S.E. 257, 258. By contacting Mickel-Hopkins or Coble, the doubting examiner would have confirmed that the instrument was not a bill of sale but evidence of a secured transaction.
 
 
 27
 The cases cited by the trustee in bankruptcy do not support his contention to the contrary. In Dorman v. Goodman, 1938, 213 N.C. 406, 196 S.E. 352, 353, the grantor of a deed was J. Frank Crowell, but the Register of Deeds erroneously listed the name on the indexes as J. L. Crowell. There was an actual person named J. L. Crowell who had made "a large number of conveyances, probably in excess of one hundred," all of which were indexed in the same index book, some at the same page as the mistaken entry. The court held in those circumstances that there was not enough disclosed by the index to put a prudent examiner upon inquiry. In the case at bar, however, the index was not misleading, as in Dorman. Rather, it indicated a lien, and if the examiner then looked to the instrument itself, enough was there disclosed to put him upon further inquiry.
 
 
 28
 Likewise distinguishable is Lowery v. Wilson, 1939, 214 N.C. 800, 200 S.E. 861, where a mortgage was intended to secure a note in the sum of $1,500.00 but, by mistake, the mortgage, as recorded, stated that it was to secure $15.00. The court refused to reform the mortgage and gave effect to it as recorded. Although the Lowery mortgage was erroneously made for $15.00, unlike our case there was nothing in it or in the recording entry to indicate any other amount. In contrast, here the document itself and the entries in the indexes indicated that it was not a bill of sale; it could be a conditional contract only, and was so denominated.
 
 
 29
 In summary, no North Carolina case has been found which is precisely in point. The decisions in this general area are sparse, and the holdings are inconclusive upon the question presently before us. They do, however, evidence a reluctance to enforce the formal requirements of the recording statute with inexorable strictness amounting to total disregard of resulting inequities.
 
 
 30
 Thus, called upon to choose between enforcing a defectively framed yet recognizable conditional contract or treating it as a nullity for security purposes, we conclude, in the spirit of the North Carolina decisions, that the former is the choice indicated. After all, there is no specific statutory requirement to use a precise formula of words. Here the intent of the parties is fairly deducible, and there is no claim or possibility that anyone was misled. We would be loath to create at the seller's expense an estate for distribution among creditors who were in no way injured by the skeletonized document self-designated as a "conditional contract" and appropriately indexed as such. The recording law was designed to prevent fraud and injustice to creditors; its salutary policy should not be so employed as unnecessarily to provide a trustee in bankruptcy with a windfall estate at the expense of one creditor. Robbing Peter to pay Paul is not a policy meriting judicial favor.
 
 
 31
 In the absence of plain statutory language or authoritative judicial exposition commanding so harsh a result, we decline to require it. We are disposed to the view that the Supreme Court of North Carolina, confronted with this same problem, would refuse to work a forfeiture of the plaintiff's rights and, instead, would rule as we do in the special circumstances of this case, without fear that the purpose of the statute would be undermined in future cases to which it may have a more just and rational application.
 
 
 32
 Reversed and remanded for further proceedings not inconsistent with the views expressed in this opinion.
 
 
 
 Notes:
 
 
 [1]
 We must look to the law of North Carolina since the effect of the recording on the trustee in bankruptcy is determined by state law. Firestone Tire & Rubber Co. v. Cross, 4 Cir., 1927, 17 F.2d 417; and see Collier on Bankruptcy, 14th Ed., sec. 70.19, n. 51 and cases cited therein
 
 
 [2]
 General Statutes of North Carolina, 1950
 "§ 47-17. Probate and registration sufficient without livery of seizin, etc. — All deeds, contracts or leases, before registration, except those executed prior to January first, one thousand eight hundred and seventy, shall be acknowledged by the grantor, lessor or the person executing the same, or their signature proven on oath by one or more witnesses in the manner prescribed by law, and all deeds executed and registered according to law shall be valid, and pass title and estates without livery of seizin, attornment or other ceremony."