**In the Matter of Earl B. DAIL, t/a Enterprise Feed Mill, Bankrupt.**

**No. 691.**

United States District Court
E. D. North Carolina,
Wilson Division.

July 5, 1966.

ruptcy and by a defendant-creditor for review of the conclusions of fact and law of the Referee in bankruptcy. The Bankruptcy Act provides for jurisdiction of the Court and it is not in dispute.

A voluntary petition in bankruptcy was filed July 1, 1964 on behalf of Earl B. Dail, trading as Enterprise Feed Mill (hereinafter referred to as the Bankrupt). A claim as a secured creditor was filed by the First National Bank of Eastern North Carolina (hereinafter referred to as the Bank), for funds received by the Trustee from the sale of certain real estate. The Bank also filed a claim as secured creditor for the proceeds from unearned insurance premiums in possession of M. C. S. Cherry and Sons.

The Trustee objected to the Bank's claims as a secured creditor. In doing so, he raised questions regarding alleged preferences received by the Bank under a chattel mortgage, and the validity of an assignment of accounts receivable.

The Referee in bankruptcy conducted a hearing, and on January 18, 1966 entered an Order decreeing the Bank had received a preference, and the Referee further ordered that the Bank had a valid assignment of the Bankrupt's accounts receivable, which included a refund of unearned insurance premiums. Upon this determination by the Referee, both the Bank and the Trustee filed petitions for review thereby raising the questions specifically set out in the "Certificate of Referee," a portion of which is attached hereto as Appendix A.

Carl V. Venters, of Venters & Dotson, Jacksonville, N. C., for Bank (Secured Creditor).

Henson P. Barnes, Goldsboro, N. C., John H. Kerr, III, Taylor, Allen, Warren & Kerr, Goldsboro, N. C., for bankrupt.

## OPINION and ORDER

LARKINS, District Judge.

### SUMMARY

This cause comes before the Court upon petitions filed by the Trustee in bank-

### FINDINGS OF FACT

The Bankrupt, Earl B. Dail, was in the business of manufacturing and selling dog food. The business was organized as an unincorporated enterprise with the Bankrupt trading as Enterprise Feed Mill and Kennels. This was a proprietorship in which the Bankrupt and his wife, Wilma Dail, and their son, Rupert E. Dail, were employed.

The Bank's course of dealings with the Bankrupt, with which we are now interested, began in the year 1962. At that

time, it advised the Bankrupt concerning the feasibility of its expanding operations, and about the means of financing the desired expansion. The financing was to be by the use of funds provided through loans from various governmental agencies. At this time Bankrupt was indebted to Bank in an amount in excess of $10,000. As a result of the Bank's advice and participation in Bankrupt's financing, a loan of $100,000.00 was obtained from the Business Development Corporation of North Carolina.

The Business Development Corporation obtained appraisals of the Bankrupt's property, upon which it based its agreement to lend, in part from the Bank's estimates of the fair market value of Bankrupt's property. The Bank certified that the property of Bankrupt was valued at $196,793. This estimate of fair market value was not based on the Bank's independent appraisal but upon the replacement costs of the Bankrupt's assets. The $100,000. loan was actually based on an appraisal of values of the Bankrupt's assets of $169,122.60, which is $77,741.87 in excess of the book value of such assets, and $73,176.28 in excess of the costs of such assets. (Def's. Ex. #2.)

The Bank agreed to make a direct loan to Bankrupt, and upon this basis loans were made in April of 1963. The Bankrupt and his wife gave deeds of trust, chattel mortgages and assignments to the Bank on all assets owned by the Bankrupt individually, in the business, and owned by Bankrupt and his wife, in return for the loans.

In this respect, the Bankrupt and his wife executed and delivered to the Bank, on April 1, 1963, a note in the amount of $90,000. This note was secured by a combination deed of trust and chattel mortgage on certain real and personal property owned by the Bankrupt and his wife, either individually or in the entireties. The deed of trust and chattel mortgage was recorded in the Wayne County Public Registry on April 8, 1963 (Trustee's Ex. #1).

On April 5, 1963, the Bankrupt and his wife executed another note to the Bank for $31,200., also being secured by a deed of trust and chattel mortgage. The same property which secured the note for $90,000. also was used as security for this note. (Trustee's Ex. #2.) This deed of trust and chattel mortgage were recorded in the Wayne County Public Registry on April 8, 1963, directly following the combination deed of trust and chattel mortgage securing the note for $90,000. These documents were indexed in both the real and personal property grantor's indicies.

As additional security for the note for $31,200., Bankrupt executed a contract to assign accounts receivable. A Notice of Assignment of Accounts (accounts receivable) was then recorded on April 8, 1963, directly after the recordation of the above instruments, in the Wayne County Public Registry. (Trustee's Ex. #3.) This Notice of Assignment was also indexed in both the real and personal property grantor's indicies.

The assignment contract specifically referred to the promissory note for $31,200., dated April 5, 1963, and which was registered in the Wayne County Public Registry directly preceding the assignment contract. The assignment contract further stated the purpose of the note for which it stood as security, and recited the parties as "Earl B. Dail, T/A Enterprise Feed Mill and Kennels, and Earl B. Dail, individually and Wilma P. Dail, his wife, * * *." The contract of assignment of proceeds states the authority and duties of the Bank and the Bankrupt. The contract, inter alia, specifically states:

"1. Each account assigned will be represented by an invoice in customary form. An instrument of assignment listing the accounts by customers of Borrower, due dates and amounts will be executed by Borrower and delivered to Bank.

"2. Borrower represents that every account assigned will represent a legally enforceable debt arising out of a transaction occuring [sic] in and to be paid in North Carolina; and this agreement and assignment are to be

governed by the laws of North Carolina. * * *"

On March 25, 1964, in order to pay fire insurance premiums due on various policies of insurance covering the properties of Bankrupt, Bankrupt was forced to borrow $4,020. from the Bank. Part of the consideration for the borrowed premiums was a contract to assign all unearned and returned fire insurance premiums to the Bank. The insurers have returned unearned premiums in the amount of $3,700., and this amount was claimed by the Bank as part of those funds includable under the registered contract assigning accounts receivable.

As still further security for this second note of $31,200., the Bankrupt executed a chattel mortgage on certain motor vehicles and personal property owned and used by the Bankrupt personally and at the mill. These specific items of personal property were not includable under any other previously recorded instrument, and included all equipment to be thereafter acquired, together with all raw materials and inventories. This particular chattel mortgage was recorded in Duplin County on April 10, 1963, a county adjacent to Wayne County. The instrument was not recorded in the Wayne County Public Registry until June 17, 1964, only fourteen (14) days prior to the date the Bankrupt filed his petition in bankruptcy. (Trustee's Ex. #7.)

Beginning in 1964, the Bankrupt made a series of overdrafts against its checking accounts with the Bank. In February 1964, a conference was held between a representative of the Bank and the Bank's Mount Olive Branch Vice President, Mr. Forest L. Walton, and the Bankrupt's bookkeeper, Mr. J. E. Roberts. At this meeting there was concern expressed by the Bank's representatives over the continuing overdrafts. (Trans., p. 96.)

On May 29, 1964, the Bankrupt provided the Bank with a balance sheet statement of income and a statement of expenses. (Def's. Ex. #1.) It reveals an "Excess of Appraised Value over net Book Cost" of $98,059.21. The statement further shows liabilities to be $170,785.35, and operating losses totaling $35,280.82. Total liabilities at this time were $170,785.35, with one of the Bankrupt's liabilities reflected in the statement being *a bank overdraft of $9,662.30.*

On June 12, 1964, the Bank and Bankrupt entered into an agreement whereby the Bank took over operations of the Bankrupt's business, although the Bank was advised by the Bankrupt's attorney that, "a liquidation would be necessary and that a bankruptcy proceeding would be appropriate." (Trans., p. 14.) The Bank undertook these operations for five days only, until June 17, 1964.

On June 17, 1964, the Bank took possession of certain of the Bankrupt's property under the terms of the chattel mortgage executed by the Bankrupt on April 5, 1963. This chattel mortgage is the one which was originally recorded in Duplin County on April 10, 1963, and subsequently recorded in the Wayne County Public Registry on June 17, 1964. All of the Bankrupt's personal property described in this chattel mortgage was located in Wayne County.

On June 29, 1964, the Bankrupt's attorney applied for a petition of voluntary bankruptcy in the United States District Court for the Eastern District of North Carolina. The petition was filed by the Clerk of the Court on July 1, 1964.

On July 3, 1964, the Bank sold the Bankrupt's motor vehicles, inventory, and packing supplies under the powers provided in the chattel mortgage securing the $31,200. note to the Bank, this being the instrument originally recorded in Duplin County. The Bank was also able to collect $13,415.96 of the Bankrupt's outstanding accounts receivable, together with an amount of $219.40 from cash sales of the Bankrupt's inventories. The Trustee in Bankruptcy liquidated the remaining assets of the Bankrupt, paid certain secured creditors and other expenses with the result that he has $8,465.17 on hand. The Bank claims entitlement as a secured creditor to these funds held by the Trustee as secured creditor under the $90,000. note, and the Trustee insists

it is entitled to the proceeds of the Bank's sale under the "Duplin County" chattel mortgage, that mortgage being a preference.

## CONCLUSIONS OF LAW

The first question to be considered is whether the recorded contract of assignment would put an interested person on notice of an assignment of accounts receivable.

The Trustee in Bankruptcy attacks the contract of assignment of accounts receivable—as it is recorded—because it fails to specify a definite period of time during which the assignment was to run. He insists the instrument filed is not in compliance with the controlling North Carolina General Statutes, and therefore fails of notice.

North Carolina General Statutes 44–77 through 44–85 provide for "Assignment of Accounts Receivable and Liens Thereon." Section 44–78(4) specifically provides in part: "(4) The notice of assignment shall be for a definite period of time stated therein, * * *."

On the actual contract of assignment, this being the document recorded, there does not appear a definite termination date. It would seem then that the requisites of Section 44–78(4) have not been properly complied with, and the notice should fail. The contract does refer to the promissory note for which it stands, however, and this note does contain a definite termination date. The note is registered at pages 328 through 335 of Book 593, Wayne County Public Registry, while the contract is registered at pages 336 through 339 of Book 593, Wayne County Public Registry. Both documents are indexed and cross-indexed and appear together in the Real Estate and Chattel Mortgage Grantor's indices of the Wayne County Public Registry.

The basic purpose of the North Carolina recordation statutes is to give notice to all interested parties that a lien exists. Harper v. Edwards, 115 N.C. 246, 20 S.E. 392 (1894); Allen v. Stainback, 186 N.C. 75 @ 77, 118 S.E. 903 (1923); both cases being cited and followed in Mickel-Hopkins, Inc. v. Frassinetti, 278 F.2d 301 (4th Cir., 1960). It would seem that in this case and on these facts, a reasonably diligent and potential creditor of the Bankrupt would have had ample notice of all the necessary facts relating to the Bank's lien against the Bankrupt's accounts receivable. A potential creditor should have been reasonably put on notice as to the lien, and the duration thereof. See Mass. Bonding & Ins. Co. v. Knox, 220 N.C. 725, 18 S.E.2d 436, 138 A.L.R. 1438 (1942).

The registration of the note and contract of assignment, one being contemporaneous with the other, was one act, and the failure to state a time of termination in the contract would be supplied by the date stated in the note. Allen v. Stainback, 186 N.C. 75, 118 S.E. 903, supra.

The important point to consider is whether those instruments were sufficient to put an interested person on notice that a lien existed. Technical formalities notwithstanding, the conclusion that the recorded instruments did so in this case is inescapable. Mickel-Hopkins, Inc. v. Frassinetti, 278 F.2d 301, supra. The Referee's conclusion, therefore, that the "notice substantially meets the requirements of the North Carolina Assignment of Accounts Receivable Act and sufficiently appraises third parties of the intent of Bank and bankrupt * * *" is not disturbed. (Opinion & Order of Referee, p. 8.)

Having determined the contract for the assignment of accounts receivable was valid as against the Trustee, the Court is next faced with the question of whether this contract should include the establishment of a lien thereby as against the returned premiums of insurance, under the terms of the contract between the Bank and Bankrupt, said contract being dated March 25, 1964. (Trustee's Ex. #4.) Of course, the applicable state laws are controlling in this matter as they were above. Firestone Tire & Rubber Co. v. Cross, 17 F.2d 417 (4th Cir., 1927); Collier, Bankruptcy, (14th Ed., 1964), Vol. 4, pp. 1143–1145.

A reading of the contract to assign the Bankrupt's accounts receivable clearly comprehends both customer accounts (see paragraph enumerated No. 1 of the contract) and any other "legally enforceable debt arising out of a transaction occuring [sic] in and to be paid in North Carolina; * * *." (See paragraph enumerated No. 2 in the contract.) It is noted that the North Carolina Assignment of Accounts Receivable Act was amended in 1957 in order to allow the assignment of a right to a future payment of money under a future contract. See North Carolina General Statutes 44–77(1) (a), which states in pertinent parts:

"§ 44–77. *Definitions.*

"(1) 'Account' or 'account receivable' means a right to the present or future payment of money—

"(a) Under an existing contract, or under a future contract entered into during the effective period of the notice of assignment hereinafter provided for,"

The case at hand is controlled by the above-quoted Sections of the Act. The contract of assignment was entered into on April 5, 1963, and registered on April 8, 1963, Wayne County Public Registry, Book 593, page 336. Then, on March 25, 1964, the contract for the financing of insurance premiums by the Bank for the Bankrupt was executed. (Trustee's Ex. #4.) As a part of this latter contract there appears, in paragraph enumerated No. 1, the following language: "1. The assured hereby assigns to the Bank as security for the payment of said sum and the interest thereon all unearned or return premiums at any time payable on said policies, * * *."

An assignment of the returned premiums is clearly contained in the contract. See Morton v. Thornton, 259 N.C. 697, 131 S.E.2d 378 (1963). This assignment was also made "during the effective period of notice of assignment * * *" (G.S. 44–77(1) (a).) Finally, it cannot be disputed that, that which was assigned was a "right to the * * * future payment of money—" (G.S. 44–77(1)), "* * * under a future contract * * *," (G.S. 44–77(1) (a)).

The decision by the Referee, therefore, that "the assignment of the 'right' is clearly within the preview [sic] of the North Carolina General Statute 44–77(1) (a)" will not be disturbed. (Opinion & Order of Referee, p. 8.)

The remaining question is whether the Referee's finding of a preference made by the Bankrupt in favor of the Bank by means of the chattel mortgage filed in Wayne County on June 17, 1964, is correct.

The elements of a preference, as it is defined under Section 60a of the Bankruptcy Act consist of,

"(1) making or suffering a transfer of his property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt * * *, (4) while insolvent, and (5) within four months of bankruptcy * * *, (6) the effect of which transfer will be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class." Collier, Bankruptcy, (14th Ed., 1964) Sec. 60.02, p. 758, supra.

The absence of any one of the six elements required to establish a voidable preference would prevent the Trustee from recovering the proceeds obtained by the Bank from the property transferred to it. Aulick v. Largent, 295 F.2d 41 (4th Cir., 1961). The burden of proving these elements is upon the Trustee. Collier, Bankruptcy, Sec. 60.01, supra.

If all the elements required are sufficiently proved by the Trustee according to Sec. 60a of the Act, then he must go one step further and show the transferee, the Bank in this case, had reasonable cause to believe the Bankrupt was insolvent at the time of transfer. Collier, Sec. 60.01, pp. 759–760, supra.

From the facts of this record the Trustee has fully established a preference, and the conclusions reached by him are supported by substantial evidence. It is noted that the Bank concedes the first two elements were present. That is

(1) the Bankrupt transferred his property, (2) for the benefit of a creditor, the Bank.

Element (3) states the transfer must have been "made by the debtor 'for or on account of an antecedent debt'." Collier, Sec. 60.19, p. 846, supra. In explanation, the following appears at pages 868–870 of Collier, supra:

"The transfer by a debtor of money or property in total or partial discharge of a valid and non-preferential existing lien on his property, which would not have been disturbed by the bankruptcy proceedings, does not constitute a preference because the assets available for general creditors are not thereby diminished. However, a transfer by the debtor may give rise to a voidable preference where there is actually no lien, where the alleged lien is void, *or where property is transferred on the theory that it is subject to a lien but in fact is not subject thereto, * * *.*" (Emphasis added.)

So it is in the case at hand. North Carolina General Statute 47–20 provides, "No deed of trust or mortgage of real or personal property, * * * shall be valid to pass any property as against lien creditors or purchasers for a valuable consideration * * * but from the time of registration * * *."

In this case the mortgagee of the personal property originally registered the chattel mortgage in Duplin County, North Carolina. North Carolina General Statute 47–20.2 provides, however, that the place of registration of a personal property mortgage is "in the county where the mortgagor resides when the mortgage is executed." (North Carolina General Statute 47–20.2(b) (1)a.) In the case of Bank of Colerain v. Cox, 171 N.C. 76, 87 S.E. 967 (1916), a personal property mortgage was originally registered in an improper county. It was subsequently properly registered, but an intervening mortgage which was properly recorded at the outset was given priority. The transfer in the first mortgage was not complete as to third parties until it was properly registered in the county

where the mortgagor resided, namely, Wayne County, North Carolina.

It can be seen then, that as far as the Trustee is concerned, the mortgage was given for an antecedent debt. This is so because the Trustee stands in the shoes of a "purchaser for a valuable consideration." North Carolina General Statute 47–20; and Commercial Casualty Ins. Co. v. Williams, 37 F.2d 326 (4th Cir., 1930). The Trustee stands in this position from the period of four months prior to the time of the filing of the petition in bankruptcy. See General Motors Acceptance Corporation v. Mayberry, 195 N.C. 508, 142 S.E. 767 (1928); and Brigman v. Covington, 219 F. 500 (4th Cir., 1915). The property listed in the chattel mortgage given as security for the note of $31,200., and originally registered in Duplin County, was not subject to the Bank's lien as against the Trustee except from the time it was properly registered in Wayne County on June 17, 1964.

Element (4) is "while insolvent," and it must appear, therefore, that the Bankrupt was insolvent on June 17, 1964. A person is deemed insolvent, within the meaning of the Bankruptcy Act when the aggregate of his property at a fair valuation is not sufficient to pay his debts. Collier, Sec. 60.30, p. 890, supra. And "[T]he determination of insolvency must be directed to the time when the alleged preferential transfer was made or suffered." Collier, Sec. 60.31, p. 895, supra.

In this case, the transfer has been determined to have been on June 17, 1964. On May 29, 1964, the Bankrupt's balance sheet not only showed a substantial operating loss but bank overdrafts totalling $9,662.30. These overdrafts had been accruing as a continuing matter for some time. It is also a fact that the Bank had been previously advised by the Bankrupt's attorney that "a liquidation would be necessary. * * *" Further, it was the Bank who insisted on taking over the management of the Bankrupt

on June 12, 1964, only to abandon the same on June 17, 1964.

The above recited facts are some of those which indicate the Referee had substantial evidence to support his conclusion that the Bank should have, in the exercise of reasonable prudence, been able to determine the Bankrupt was insolvent. See Collier, Sec. 1.19, p. 128, and Sec. 60.53, pp. 1057–1058, supra.

Element (5) is "within four months of bankruptcy." This element is not contested as to the fact that registration in Wayne County occurred on June 17, 1964, while the Clerk of the United States District Court filed the petition in bankruptcy on July 1, 1964, two weeks after the lien was established in Wayne County.

Element (6) is "the effect of which transfer will be to enable the creditor to obtain a greater percentage of the debt than some other creditor of the same class." Of course, if the Bank were entitled to preferred treatment as a secured creditor, then it would be entitled to the benefits of the sale of those chattels covered by the mortgage in question. This entitlement would be in preference to the general creditors of the Bankrupt who would otherwise share in the proceeds of that sale.

Lastly, it is argued by the Bank that the Trustee failed to prove the additional element imposed upon him by Section 60b of the Act, that is, that the Bank had reasonable cause to believe the Bankrupt was insolvent at the time of transfer.

In discussing element (4) above, some of the facts showing the Bankrupt to be insolvent were set out. Those facts need not be restated, but they indicate that a reasonably prudent businessman, in the exercise of reasonable management, could not help but conclude that the Bankrupt was insolvent. This is especially true when examined in light of the Bank's call for a meeting of May 29, 1964, requiring a balance sheet to be presented, and in its "take over" on June 12, 1964.

The Referee's conclusion in this respect, and in all respects relating to the preference is, therefore, adequately supported by the evidence. See Collier, Sec. 1.19, p. 128, supra; Brigman v. Covington, 219 F. 500, supra; and Commercial Casualty Ins. Co. v. Williams, 37 F.2d 326, supra.

### ORDER

Therefore, it is ordered that the Petition for Review of the Order of the Referee in Bankruptcy by the First National Bank of Eastern North Carolina be, and the same is hereby denied.

It is further ordered that the Petition for Review of the Order of the Referee in Bankruptcy by the Trustee in Bankruptcy be, and the same is hereby denied.

It is further ordered that the Opinion and Order of the Referee in Bankruptcy, and his memorandum in support thereof will not be disturbed, the same being deemed correct in law, and supported by substantial evidence in facts, and is therefore affirmed.

It is further ordered that the Clerk serve a copy of this opinion and order upon the Trustee in Bankruptcy, the Referee in Bankruptcy, and all counsel of record.

### APPENDIX A

### CERTIFICATE OF REFEREE

To the Honorable Judge of the United States District Court:

A voluntary petition in bankruptcy was filed on behalf of Earl B. Dail, T/A Enterprise Feed Mill on July 1, 1964. The assets of the bankrupt were sold by the trustee under Order of this Court, which Order provided that the liens of creditors, if any, would attach to the proceeds in the possession of the trustee.

Subsequently, the First National Bank of Eastern North Carolina hereinafter referred to as Bank, filed a claim in this proceeding as a secured creditor in the amount of $8,465.17, representing funds received by the trustee from the sale of certain real estate and for $3,700.00, representing proceeds in the possession

of M.C.S. Cherry and Sons for unearned insurance premiums.

The trustee filed objections to the secured claim of the Bank and raised certain questions regarding the validity of the security instrument on the unearned insurance preminums and certain questions regarding alleged preferences received by the Bank under a chattel mortgage and under an assignment of accounts receivable.

All parties waived notice and consented to jurisdiction of the Court and on the 22nd day of January, 1965, the undersigned conducted a hearing on the questions raised by the parties. At the hearing, Mr. George R. Kornegay, Jr. was represented by Mr. Henson Barnes, Attorney at Law, Goldsboro, North Carolina, and the Bank was represented by Mr. Carl Venters and Mr. Marshall Dotson, of the firm of Venters and Dotson, Attorneys at Law, Jacksonville, North Carolina.

After hearing all of the testimony, examining all of the exhibits and considering all evidence, the Court, on the 18th day of January, 1966, entered an Order decreeing that the Bank had received a preference in the amount of $10,219.40, and that the trustee was entitled to recover such amount from the Bank and the Order further decreed that Bank had a valid assignment of the bankrupt's accounts receivable and that such assignment included the $3,700.00 representing a refund of unearned insurance premiums.

Both the Bank and the trustee in bankruptcy have filed petitions for review and the questions raised in both petitions are hereinafter combined on this certificate. The petition for review which was filed by the Bank is attached hereto as Exhibit No. 1. The petition for review which has been filed by the trustee is attached hereto as Exhibit No. 2.

The undersigned Referee further certifies that the questions presented for consideration by the petitions for review are as follows:

1.

Whether or not the evidence is sufficient to support the following conclusions of fact and law of the Referee.

A. That at the time of the transfer on June 17, 1964, the fair value of the bankrupt's assets and all of the assets available for creditors was $125,000.00, and the bankrupt's liabilities were $170,000.00, and the bankrupt was insolvent.

B. That the transfer by the bankrupt to the Bank on June 17, 1964, constituted a preference to Bank.

C. That at the time of the transfer by the bankrupt to the Bank on June 17, 1964, the Bank knew or had reasonable cause to believe that the bankrupt was insolvent.

D. That the property transferred to Bank by bankrupt on June 17, 1964 was converted by the Bank on July 3, 1964 by its sale to Bank and the subsequent transfer thereof by the Bank to a third party and by a direct sale of the bankrupt's inventory by the Bank.

E. That the fair value of all of the property transferred to Bank by the bankrupt on June 17, 1964, was $10,219.40.

2.

Whether or not the trustee in bankruptcy is entitled to retain all proceeds in his possession belonging to Bank until such time as the Bank pays the trustee the sum of $10,219.40, representing the value of the Bank's preference.

3.

Whether or not the Referee erred as a matter of law in concluding that the Notice of Assignment recorded by Bank in Wayne County on April 8, 1963, substantially complies with the N. C. Assignment of Accounts Receivable Act (N.C.Gen.Stat. 44–78(4)) notwithstanding the fact that such notice did not state that it was for a definite period of time.

4.

Whether or not the Referee erred as a matter of law in concluding that the

contract between the Bank and the bankrupt regarding the refund of unearned insurance premiums constituted a valid assignment of unearned insurance premiums and was protected by the Notice of Assignment which was recorded by Bank in Wayne County on April 8, 1963.