**Marengo State Bank, an Illinois Banking Corporation, Plaintiff-Appellee, v. Tilden P. Meyers, et al., Defendants-Appellants.**

Gen. No. 67–30.

Second District.

December 7, 1967.

Canfield, Canfield and Franks, of Rockford, for appellants.

Paul W. Jevne, of Marengo, and Peterson, Lowry, Rall, Barber and Ross, of Chicago, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is an appeal by Marion Meyers Johnson, herein called the appellant, from a judgment entered against her after a bench trial in the Circuit Court of the 17th Judicial Circuit. The defendant-appellant is the mother of Tilden P. Meyers, herein called Tilden, and Frank P. Meyers, herein called Frank, who were additional defendants in this litigation.

On August 3, 1966, the Marengo State Bank, herein called the Bank, caused a judgment to be confessed against the three defendants in the total sum of $27,601.80, and costs of the suit. This judgment, herein referred to as the original judgment, was based on a promissory note in the principal sum of $25,000, with interest due thereon in the sum of $86.80 and attorney's fees in the sum of $2,515, pursuant to the provisions of the confession clause of the note.

The essential facts in connection with this litigation are undisputed. The appellant and her two sons held title, in joint tenancy, to a parcel of farmland near Belvidere on which Tilden and his family resided. Prior to January 20, 1966, Tilden negotiated a $20,000 loan with the Bank, based on his financial statement, showing a net worth of $419,200, and the joint signatures of the appellant and Frank.

Tilden desired to remodel his home and advised the Bank that the proceeds of the loan would be used for this purpose, and subsequently $19,500 thereof was so used. On January 20, 1966, Tilden delivered to the Bank an executed judgment note in the sum of $20,000, due July 1, 1966, purporting to bear the signatures of the appellant and Frank, as well as his own. The appellant's and Tilden's signatures were genuine, but that of Frank was a forgery.

Prior to July, 1966, Tilden again called at the Bank and requested a renewal of the existing loan, and an additional $5,000, which was needed to complete the home remodeling work. The Bank agreed to comply with Tilden's request and gave him a new note in the sum of $25,000 with directions that he obtain the signatures of the appellant and Frank on said note and return it to the Bank. This note was executed by Tilden at that time and was payable on September 14, 1966.

On July 14, 1966, Tilden delivered the $25,000 note to the Bank with the purported signatures of the appellant

and Frank thereon, received an additional $5,000 from the Bank, and a bank teller surrendered the $20,000 note to him. This note remained in Tilden's possession until produced at the trial by him, pursuant to subpoena. On the face of the note the teller wrote the word "Renewed."

The purported signatures of the appellant and Frank on the $25,000 note were both forgeries and they filed motions to vacate the judgment and for leave to plead. The judgment was opened up as to them on September 2, 1966, they were given leave to plead, and each filed an answer which stated in substance that his and her purported signatures were not genuine, but rather, were forgeries. Pending hearing on the pleadings, the judgment stood as security.

On September 23, 1966, pursuant to leave of court, the Bank filed an amendment to its complaint—designated as Count II—alleging a second cause of action against the appellant and Frank, based upon the $20,000 note dated January 20, 1966.

This count alleged: the making and delivery of the $20,000 note and its provision for interest and attorney's fees; that while the Bank was the owner and holder thereof, Tilden delivered to it the $25,000 note dated July 14, 1966, purportedly executed by the three defendants against whom judgment was confessed, and Tilden then paid the interest due on the $20,000 note; that Tilden on July 14, 1966, received an additional $5,000 loan from the Bank, and when he presented the $25,000 note to it, he represented to the Bank that it had been signed by himself, the appellant and Frank, knowing that the signatures of appellant and Frank were forgeries; that the Bank relied on Tilden's representations and returned the note dated January 20, 1966 to him; that had the Bank known that the signatures of the appellant and Frank were forgeries, it would neither have made the additional loan of $5,000 to Tilden nor returned the $20,000 note to him; that the Bank is the owner and hold-

424

er of the $20,000 note; and that there is due and owing to it on said note, from the defendants, Frank, and the appellant, the principal sum of $20,000, plus interest in the sum of $116.66, and attorney's fees in the sum of $2,015, making a total amount due of $22,131.66, and costs of the suit.

The appellant filed a motion to strike Count II, which was denied, and the appellant and Frank each thereafter answered the count in the nature of a general denial, and they asserted, as an affirmative defense, that the Bank was not the owner and holder of the note; and that it had been surrendered to Tilden, as one of the makers, and was thereby discharged. Frank further asserted that the note dated January 20, 1966, did not bear his signature.

On September 23, 1966, the judgment of August 3, 1966 was confirmed against Tilden and the case was tried on October 7, 1966. The court then found that the appellant's signature on the note of January 20, 1966 was genuine; that the purported signature of Frank thereon was not his signature; and that the purported signatures of appellant and Frank on the note dated July 14, 1966, in the sum of $25,000 were not their respective signatures. On said date, the court vacated the judgment entered against Frank on August 3, 1966, in the sum of $27,601.80, and on November 2, 1966, vacated said judgment as to appellant.

Thereafter, on January 23, 1967, the court entered judgment for the Bank and against the appellant on Count II in the sum of $20,643.33. The court found in its judgment order, herein referred to as the second judgment, that the signatures of Tilden and the appellant on said note were genuine; that Frank's was a forgery, and found the facts heretofore stated relative to Tilden's negotiation of the $25,000 loan. It recited the vacation of the August 3, 1966 judgment as to appellant and Frank; found that Tilden obtained possession of the $20,000 note from the Bank by fraudulent and deceitful means; and

that its delivery to Tilden did not release the appellant from her liability on said note.

The court included in its judgment on Count II, in favor of the Bank and against the appellant, the principal sum of said note—$20,000—plus interest thereon from July 14, 1966 to January 23, 1967, in the sum of $643.33, and costs. It further ordered that all payments made by appellant as to principal, interest and costs on this second judgment, be also credited on the original judgment against Tilden; and that all payments made by Tilden as to principal, interest and costs on the original judgment entered against him, be credited to and applied on the principal, interest and costs of the second judgment. Subsequently, by nunc pro tunc order, the court clarified the second judgment and ordered that the plaintiff not recover attorney's fees from appellant.

The appellant has appealed from this judgment in the sum of $20,643.30, and the Bank has cross-appealed from that part of the second judgment order disallowing it attorney's fees, and from the judgment order entered November 2, 1966 which vacated the original judgment as to appellant.

The appellant contends that the judgment against her was erroneous for the reason that the Bank was neither the holder nor the owner of the note upon which the judgment was based; and that the Bank had voluntarily surrendered the note to one of the original makers and had thereby discharged the obligation created by the note. In support thereof she cites sections 3–605(1)(a), (b) and (2); and 3–601(3)(a) and (b) of the Commercial Code (Ill Rev Stats c 26, pars 3–605(1)(a), (b) and (2); and 3–601(3)(a) and (b)), which provide:

"3–605 CANCELLATION AND RENUNCIATION.

"(1) The holder of an instrument may even without consideration discharge any party

426

"(a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or

"(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

"(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto.

"3–601 DISCHARGE OF PARTIES.

"(3) The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument

"(a) reacquires the instrument in his own right; or

"(b) is discharged under provisions of this Article, except as otherwise provided with respect to discharge for impairment of recourse or of collateral (Section 3–606)."

The Bank urges that appellant is liable to it in that she knowingly and voluntarily executed the note of January 20, 1966, and its proceeds substantially inured to her benefit; and that her liability was not discharged when the co-maker, Tilden, by fraudulent and deceitful means induced the Bank to surrender that note to him. It contends that the discharge provisions of Article 3 of the Commercial Code, upon which appellant relies, apply only

to negotiable instruments; and that the note of January 20, 1966, is not a negotiable instrument within the meaning of the Code since it provided that judgment could be confessed upon it before maturity. The Bank cites sections 3–102(1)(e) and 3–112(1)(d) of the Commercial Code to sustain its contention. (Ill Rev Stats 1965, c 26, pars 3–102(1)(e) and 3–112(1)(d)). Said sections provide as follows:

"3–102 Definitions and Index of Definitions.

"(1) In this Article unless the context otherwise requires

"(e) 'Instrument' means a negotiable instrument.

"3–112 Terms and Omissions Not Affecting Negotiability.

"(1) The negotiability of an instrument is not affected by

"(d) a term authorizing a confession of judgment on the instrument if it is not paid when due; . . ."

The Bank further asserts that the provision in the note of January 20, 1966, requiring the makers to pay attorney's fees in event the note was placed in the hands of an attorney for collection, is valid; that the trial court erred in failing to include the stipulated attorney's fees in the second judgment which it entered against the appellant as a co-maker of the note; and that the trial court should have permitted the original judgment to stand as security until a final determination of the cause on its merits.

The threshold question is whether the $20,000 note dated January 20, 1966, was discharged by its delivery or surrender to Tilden, as provided in section 3–605(1)(b)

of the Commercial Code. The answer depends, in part, upon whether the note was a negotiable instrument. If so, the above provisions of the Code may govern, and if not, such provisions would be inapplicable.

Both of the notes in question provided that judgment could be confessed thereon "at any time after date." The Code comment with reference to section 3–112(1)(d) states:

> "This paragraph changes Illinois law. Section 5(2) of the Illinois version of the NIL deleted the clause 'if the instrument be not paid at maturity' in Sec 5(2) of the Uniform Law. This change was intended to incorporate in the Illinois NIL the rule of Gehlbach v. Carlinville Nat'l Bank, 83 Ill App 129 (3rd Dist 1898), which held that a clause allowing confession of judgment to be made even before maturity did not impair negotiability of a note. See Beard v. Baxter, 258 Ill App 340 (3rd Dist 1930); Davis v. Mosbacher, 252 Ill App 536 (4th Dist 1928), cert denied, 252 Ill App xiii.
>
> "Under this paragraph an instrument may not authorize confession before maturity and remain negotiable."

(SHA c 26, par 3–112(1)(d), p 59).

■ If the negotiability of an instrument is not affected by a term authorizing a confession of judgment on the instrument if it is not paid when due, conversely, it would seem that the negotiability would be affected by a term in the instrument authorizing a confession of judgment thereon prior to its maturity. This view is sustained by both court decisions and texts. Hawkland—A Transactional Guide to the Uniform Commercial Code—Vol 1, pages 476 and 477 states:

> "Subsection 3–112(1)(d) is an important provision in the handful of states that permit a clause to be inserted in a negotiable instrument authorizing

the confession of judgment. The subsection makes it plain that the confession of judgment clause is not an acceleration clause, and, therefore it can be used in a negotiable instrument only if the instrument is not paid when due. *Clauses permitting a judgment to be confessed at any time,* therefore, destroy negotiability. This is made clear by official Comment 2 to section 3–112, which states that: 'As under the original Section 5(2), paragraph (d) is intended to mean that a confession of judgment may be authorized only if the instrument is not paid when due, and that otherwise negotiability is affected.' " (Italics Ours.)

In Bittner v. McGrath, 186 Pa Super 477, 142 A2d 323 (1958) at page 325 the court stated:

"The note of the defendants for $5,400 which was assigned to the plaintiff by Narduc authorized the confession of judgment (as did all other notes executed by the defendants) 'as of any term'. The note therefore was not negotiable. A note containing a warrant to confess judgment *at any time* is a nonnegotiable instrument. Cf. Uniform Commercial Code of April 6, 1953, PL 3, 12A PS Section 3–112 (d) ; Shinn v. Stemler, 158 Pa Super 350, 45 A2d 242."

Also see: Smith v. Lenchner, 204 Pa Super 500, 205 A2d 626 (1964) ; Fidelity Trust Co. v. Gardiner, 191 Pa Super 17, 155 A2d 405 (1959) ; United States Nat. Bank in Johnstown v. Drabish, 187 Pa Super 169, 144 A2d 640 (1957) ; Shinn v. Stemler, 158 Pa Super 350, 45 A2d 242 (1946).

 In view of the determination that the notes in question were not negotiable, we conclude that sections 3–601 and 3–605, cited by the appellant, have no relevancy to such notes and do not compel us to hold that the

$20,000 note dated January 20, 1966, was discharged by its delivery to Tilden.

Section 1–103 of the Code (Ill Rev Stats 1965, c 26, par 1–103), provides:

"Sec. 1–103. Supplementary General Principles of Law Applicable.

"Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, *fraud, misrepresentation,* duress, coercion, *mistake,* bankruptcy, or other validating or invalidating cause *shall supplement its provisions.*" (Italics Ours.)

It is our belief that the drafters of the Commercial Code did not intend to draw a set of inflexible rules which would cast aside the long-recognized and well-established basic legal principles governing parties to commercial paper. Rather, they specifically provided that the provisions of the Code were to be augmented by such principles, including those related to fraud, misrepresentation and mistake.

The evidence in this case was largely uncontroverted, and we believe that the plaintiff proved by the preponderance thereof that Tilden obtained possession of the note dated January 20, 1966, by fraudulent and deceitful means. Such finding was made in the judgment order dated January 23, 1967. Under such circumstances, the trial court was correct in holding that the appellant could not retain the benefits of the fraud perpetrated by her son, Tilden. The law neither condones fraudulent conduct, nor does it permit one party to reap the harvest of another's fraud.

In the case of Hood v. Hollister, 235 Ill App 112 (1924), the plaintiff, Rosa Hood, loaned $300 to Carl Hollister,

taking an interest-bearing note signed by Carl and his brother, James. On maturity of the note, Carl asked for an extension and was told to see his brother with regard to further security. He later delivered a new note to the plaintiff, likewise purportedly signed by himself and his brother. Thereupon, the plaintiff surrendered the first note to Carl. When the plaintiff learned that James had not signed the second note, she instituted suit against him for the amount due on the original note.

James pleaded release by delivery of the original note to the co-maker; the payment of the original note by the acceptance of the new note; an account stated by acceptance of the new note for and on account of the first note; and release of himself from liability on the first note by reason of the extension of time by acceptance of the new note without his knowledge or consent. At pages 117, 120 and 121 the court stated:

> "It is well understood that fraud vitiates every transaction into which it enters. Three special pleas were interposed to the declaration counting on the first note upon which the suit was brought: release, payment, and discharge of appellant on account of extension of time to Carl Hollister. Before the matter pleaded could operate to bar the action, the transaction must have been a lawful one, or one, though unlawful, was known to be so by appellee; or that she had notice of facts that put her upon inquiry which she failed to pursue to knowledge. . . .
>
> ". . . Under very similar circumstances the Appellate Court of the First District in Commercial Loan and Trust Company v. Mallers, 141 Ill App 460 (462) . . . said:
>
> " 'Appellee cannot disaffirm the action of his son in indorsing his name upon the new note, and thereby escape the obligation of paying it, and affirm the son's action as paying the note in faith of the unauthorized indorsement. So that appellee, in repudiat-

ing his liability upon the second note, assumes the obligation to discharge his liability arising from his guaranty of the first note.' "

The contentions of the appellant in the case at bar and the appellee in Commercial Loan & Trust Co. v. Mallers, supra, are substantially the same. Consequently, we believe that the appellant in repudiating her liability upon the second note by virtue of the forgery of her signature thereon, thereby assumed the obligation to discharge her liability as a co-maker of the first note which bore her genuine signature. Absent other facts compelling a contrary holding, right reason requires that a note bearing the signature of co-maker A, which has been surrendered to co-maker B, be revived and made enforceable upon a determination that the signature of co-maker A was forged on the second note, which co-maker B gave in liquidation of the first note.

In 10 CJS, Bills & Notes, par 444(d), page 980, the general rule of law governing cases of this character is stated as follows:

> "Since an obligation cannot be paid and satisfied by a new promise of a debtor which is unfulfilled and which he can avoid at his pleasure, a note is not discharged by the giving of a new note in payment thereof where the new note proves invalid. Therefore, the surrender of a note and the acceptance of a new note in payment without knowledge that the new note is a forgery does not discharge the original note." (Citations.) Also see: Manker for Use of Ruyle v. Manker, 249 Ill App 161, 163 (1928).

Thus, the trial court properly found, under the law and the evidence in the case at bar, that the surrender of the original note was accomplished by Tilden's fraud and deceit; and that the original obligation, therefore, was not discharged. In addition, the record in the case at bar

433

fails to disclose that the Bank had notice of facts to put it on inquiry which it failed to pursue.

We do not believe that the trial court erred in denying attorney's fees as a part of the judgment entered against the appellant. Such fees in the sum of $2,015 were included in the judgment which was entered on the $25,000 note. The total indebtedness which the Bank can collect by virtue of the judgments of August 3, 1966, against Tilden in the sum of $27,601.80 and of January 23, 1967 against the appellant in the sum of $20,643.33, is the total amount of the first judgment, plus interest due thereon and costs of suit. An award of fees in connection with each judgment would constitute a duplication of attorney's fees and would bear the same hallmark of impropriety and unfairness of which the Bank herein complains.

The Bank has also urged that the trial court should have permitted the original judgment of August 3, 1966, which was entered against all three defendants, to stand as security until the final determination of the cause on its merits. This judgment was opened up on September 2, 1966, the appellant and Frank were granted leave to plead, and the judgment was ordered to stand as security.

The case was tried on October 7, 1966, and the court, in its judgment order of November 2, 1966, found that the signature of the appellant on the $25,000 note was a forgery, and vacated and set aside this judgment as to her. At this time, the Bank had filed Count II of its complaint, the appellant and Frank had filed answers thereto, and all proof had been made in connection with this litigation. Nothing further transpired until the court entered its order of January 23, 1967, which was heretofore referred to in detail, and which ordered, among other things, that the Bank recover from the appellant, $20,643.25 and costs of suit. Appellant contends that the judgment of August 3, 1966 was opened up as to her on September 2, 1966, and was vacated as to her on No-

vember 2, 1966; and that there was no basis for any lien against her thereafter until the entry of the judgment against her on January 23, 1967.

Supreme Court Rule 23 provides, among other things, as follows:

"OPENING OF JUDGMENT BY CONFESSION . . .

"If an order is entered opening the judgment, defendant may assert any counterclaim, and plaintiff may amend his complaint so as to assert any other claims, including claims which have accrued subsequent to the entry of the original judgment. . . . *The original judgment stands as security,* and all further proceedings thereon are stayed until the further order of the court, but if the defense is to part only of the original judgment, the judgment stands as to the balance and execution may issue thereon." (Ill Rev Stats 1965, c 110, par 101.23.) (Italics Ours.)

■ ■ Under the above Rule and court decisions, courts exercise jurisdiction, equitable in nature, over judgments obtained by confession under warrants of attorney in order to admit a defense upon the merits, allow a plaintiff to amend his complaint to assert any other claim, including those which accrued subsequent to the entry of the original judgment and to permit the defendant to assert any proper counterclaim. Under this Rule, the judgment is not vacated or set aside, but rather is opened up to afford both parties litigant an opportunity for a hearing on the merits on all claims and defenses involved—the judgment meanwhile remaining in force and standing as security. First Nat. Bank of Palatine v. Hahnemann Institutions of Chicago, 356 Ill 366, 370, 371, 190 NE 707 (1934); Farmers Bank of North Henderson v. Stenfeldt, 258 Ill App 428, 430 (1930).

At the time of the entry of the order of November 2, 1966, all issues were before the court and it was estab-

435

lished—in fact conceded—that appellant's signature on the first note was genuine. Therefore, the court erred in vacating the original judgment as to the appellant. It should have continued to stand as security until the entry of the judgment order of January 23, 1967, which made a final determination of the litigation.

Accordingly, the second judgment of the trial court which was entered in favor of the Bank and against the appellant on Count II on January 23, 1967, in the sum of $20,000, plus interest and costs, from which the appellant has appealed and from which the Bank has cross-appealed with reference to the disallowance of attorney's fees, is affirmed in all respects; and the order of November 2, 1966, vacating the original judgment as to the appellant, from which the Bank has cross-appealed, is reversed, and it is hereby ordered that the original judgment of August 3, 1966, shall continue to stand as security with reference to, and to the extent of the second judgment of January 23, 1967, to the end that the Bank may have a valid lien effective against the property of the appellant from the date of said original judgment.

Judgment affirmed in part and reversed in part.

MORAN and ABRAHAMSON, JJ., concur.