Bittner, Appellant, *v.* McGrath.

Argued March 20, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and WATKINS, JJ. (ERVIN, J., absent).

*Frank J. Strassner, Jr.,* for appellant.

*Charles H. Greenberg,* with him *Robinson, Greenberg & Lipman,* for appellees.

OPINION BY HIRT, J., June 11, 1958:

The defendants contracted with Narduc Construction Company for the erection of a motel on their land. We will refer to this contractor as Narduc. On February 8, 1954, the defendants executed a judgment note in the sum of $11,700 payable to Narduc covering construction costs. By three payments made by defendants the principal of the note was reduced to $8,000, and on surrender of the prior obligation the defendants on August 4, 1954 gave the contractor a new note in that amount. No waiver of the right to file mechanics liens had been filed of record. When defendants therefore were informed that two subcontractors had not been paid on completion of their work, by agreement of the defendants with Narduc, a payment of $2,600 made on the note on August 26, 1954, was divided between Narduc and the two subcontractors reducing the debt to $5,400. Thereupon a new judgment note was given by defendants to Narduc. Early in February 1955 the plaintiff, John E. Bittner, notified defendants that he had purchased the above $5,400 note and he then demanded payment. Defendants made three payments to Bittner thereafter which reduced the balance of the debt to $4,000. In each instance a new judgment note payable to Bittner was given by them. The note for $4,000 was dated April 26, 1955. Legal action was subsequently brought against the defendants by a plumber, and a second action was threatened by an electrician, for work performed by them as subcontractors of Narduc in the construction of the building. The defendants settled the two claims for a total payment of $2,000. Thereupon defendants made a demand on Bittner for a credit of $2,000 on the note held by

him. This was refused and on December 2, 1955, the plaintiff Bittner entered the note in judgment assessing his damages at $4,156.75. On February 27, 1956, the defendants petitioned to have the judgment opened and to be let into a defense, and on September 23, 1957, the rule granted thereon was made absolute. This is the plaintiff's appeal from that order.

The note of the defendants for $5,400 which was assigned to the plaintiff by Narduc authorized the confession of judgment (as did all other notes executed by the defendants) "as of any term". The note therefore was not negotiable. A note containing a warrant to confess judgment *at any time* is a non-negotiable instrument. Cf. Uniform Commercial Code of April 6, 1953, P. L. 3, 12a PS §3-112(d); *Shinn et al. v. Stemler*, 158 Pa. Superior Ct. 350, 45 A. 2d 242. Accordingly the plaintiff Bittner, by assignment, took that obligation of the defendants subject to every defense which they had or might have had against Narduc, the payee named in the note, regardless of whether Bittner, the assignee, knew of infirmities in the obligation.

In our view it is of no controlling importance under the circumstances that the defendants reduced the principal of the note which had been assigned by Narduc to Bittner by payments to him and on surrender of the former notes gave a new note for $4,000 to Bittner as the payee. Under the circumstances the payments on the $5,400 note and the giving of the new note for $4,000 to Bittner did not amount to a waiver of defense to the obligation of the defendants on the note in question.

After the original note had been reduced to $8,000 the defendants received notice from a roofing subcontractor that he had not been paid. The defendants thereupon paid this roofer $1,032 to forestall the filing of a mechanics lien against their land. Under like

circumstances the defendants also paid $500 on the account of a plumbing subcontractor who had not been paid by Narduc. On August 26, 1954, defendants were given credit by Narduc for these payments, which, with an additional credit for $1,078 paid to Narduc in cash, reduced the obligation to $5,400. After these credits the defendants gave Narduc a new judgment note, on surrender of the old, in that amount. At about this time a lawyer representing an electrician notified defendants that Narduc owed him $2,436 for his work as a subcontractor on the job. As to the payment of the balance of the plumber's claim, a written agreement was entered into by Harry Nardi, representing the construction company, with defendants to the effect that one-half of the amounts paid by them thereafter on the $5,400 note, would be turned over to the plumber's lawyer until the account was paid in full. In October 1954 Harry Nardi of the Narduc Company came to see defendant Herbert McGrath and brought the plaintiff Bittner with him. This was before the note was assigned to Bittner. Nardi asked for money, and Bittner also made a demand for at least "a couple hundred dollars." McGrath replied that he would see what he could do but reminded both of them that half of whatever he could pay would have to go to the plumber. McGrath next heard from Bittner in February 1955 when he called McGrath by phone stating that he had bought the note and he said "he got to have his money right away." He threatened legal proceedings, but when McGrath indicated that he would raise some money, he by agreement met with Nardi and Bittner in Nardi's office. McGrath offered to pay $500 on the note in two checks for $250 each, one payable to the plumber and the other to Bittner. Bittner insisted on getting the whole $500 and McGrath finally paid that amount to him on Bittner's representation that there

would be enough to discharge the claims of unpaid subcontractors with the last $3,600 owed by the defendants on their obligation, after the note was paid down to that amount. This statement by Bittner in Nardi's presence implied an identity of interest between them. The understanding was that the final $3,600 to be paid on the obligation would be dedicated to the discharge of the claims of unpaid subcontractors. Under similar circumstances McGrath made further payments reducing the obligation to $4,000 and it was then that the defendants gave Bittner the note here entered in judgment. Bittner when he received the note for $4,000, in referring to the claims of subcontractors, stated to McGrath "When we get it down a little lower we will make sure everything is O.K." In May of 1955 Bittner again made a demand for a payment of $500 on the note. When he was reminded of the agreement as to the payment of subcontractors Bittner said: "They are being paid", impliedly by Narduc. The statement was false, and when the electrician and the plumber each brought suit the defendants paid them a total of $2,000 in settlement. Defendants thereupon claimed credit in that amount on the note held by Bittner.

On this testimony the lower court (in language of understatement, in our opinion) said: "Plaintiff seems to have had full knowledge that his assignor had not paid the subcontractors, and, due to this default, defendants had arranged to pay the sub-contractors out of the sum due to the assignor. Plaintiff appears to have acquiesced in this arrangement, and was aware of the fact that defendants had a valid set-off against his claim."

On this view of the petitioners' proofs, the judgment was opened in the exercise of a proper judicial discretion. Appellant however contends that the judgment

may be opened only as to the amount of the credit claimed by the petitioners and not as to the full amount of the note. This question was not raised below in the petition and answer and need not be considered here. *Land Title B. & T. Co. v. Kolker,* 159 Pa. Superior Ct. 529, 49 A. 2d 277.

Order affirmed.