United States National Bank in Johnstown et al.,
Appellants, *v.* Drabish.

Argued June 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before LANSBERRY, P. J.

*Earl F. Glock* and *George R. Sewak,* Assistant United States Attorney, with them *Donald C. Bush,* Assistant United States Attorney, *Hubert I. Teitelbaum,* Acting United States Attorney, *Clarence L. Shaver, Harry Doerr, Nathaniel A. Barbera,* and *Shaver, Heckman & Barbera,* for appellants.

*Frank S. Lucente,* for appellees.

OPINION BY ERVIN, J., September 11, 1958:

These two appeals were taken from an order making absolute a rule to show cause why a judgment by confession entered against defendants on their judgment note should not be opened.

On December 18, 1953 the defendants, John Drabish and Verdine Drabish, entered into and signed a written contract for the installation of a heating system in their home by the General Distributing Company. The defendants did not have the means to pay for the improvement in cash and therefore made a written application to the United States National Bank in Johnstown (hereinafter called "bank") to obtain credit under the terms of Title 1 of the National Housing Act. At the same time the defendants also signed a separate judgment note to be used to raise money for payment of the contractor. The heating system was installed during the month of January 1954 and was completed on February 1, 1954, at which time the defendant signed an FHA Title 1 completion certificate, the material part of which reads as follows:

"FHA TITLE 1 COMPLETION CERTIFICATE
(Work Done or Materials Delivered)
To: United States National Bank in Johnstown.
216 Franklin St., Johnstown, Pa.

"In accordance with my (our) Credit Application dated Feb. 1, 1954, for a loan pursuant to the provisions of Title 1 of the National Housing Act:

CHECK HERE IF LOAN IS TO PAY FOR COST OF MATERIALS AND INSTALLATION

"I (We) hereby certify that all articles and materials have been furnished and installed and the work satisfactorily completed on premises indicated in my (our) Credit Application.

". . .

"NOTICE TO BORROWER

"DO NOT SIGN this certificate until you are satisfied that the dealer has carried out his obligations to you and that the work or the materials have been satisfactorily completed or delivered.

Date ................

Borrower Signature    John Drabish

Borrower Signature    Verdine Drabish

(Read before signing)

"For the purpose of inducing the payment of proceeds of this loan and the insurance thereof by the FHA the undersigned certifies and warrants that: (1) The above work or materials constitute the entire consideration for which this loan is made. (2) A copy of the contract or sales agreement has been delivered to the borrower and the above financial institution. (3) This contract contains the whole agreement with the borrower. (4) The borrower has not been given or promised a cash payment or rebate nor has it been represented to the borrower that he will receive a cash bonus or commission on future sales as an inducement for the consummation of this transaction. (5) The work has been satisfactorily completed or materials delivered. (6) The above certificate was signed by the borrower after such completion or delivery. (7) The signatures hereon and on the note are genuine. (8) All bills for labor or materials have been or will be paid.

"If any of the above representations prove incorrect, the undersigned agrees to promptly repurchase the note from the financial institution or from the FHA as the case may be.

DEALER SIGN HERE

General Distributing Company

(Name of Dealer)

By  Charles Marcinko  (partner).

(Signature)

Date 2-1-54

". . . ."

On February 1, 1954 one of the partners of the General Distributing Company assigned and delivered the note, together with the completion certificate, to the

bank. It discounted the note and paid the proceeds thereof to the payee-assignor and on February 4, 1954 entered judgment on the note. On or about March 10, 1954 defendants appeared at the bank and complained about the work but on March 17, 1954 they sent the bank the first payment due on the note. The defendants subsequently defaulted on the note and the bank assigned the judgment, in accordance with FHA procedure, to the appellant, United States of America, which is now the holder of record thereof. On February 13, 1956 the defendants petitioned the court to open the judgment, averring that the work for which the note was given in payment was unsatisfactory and that there was a failure of consideration. The bank filed an answer to the motion and, after hearing, the court on March 11, 1957 made an order opening the judgment, from which order two appeals were taken, one by the bank and the other by the United States of America.

A majority of this Court are of the opinion that the order of the court below must be reversed.

The note was non-negotiable because it authorized a confession of judgment before maturity: *Home Credit Co. v. Preston,* 99 Pa. Superior Ct. 457; *Gimbel Bros., Inc. v. Hand,* 101 Pa. Superior Ct. 212. Therefore, appellant is merely an assignee of the note and took it subject to all equities with which it was affected in the hands of the assignor unless the defendants had estopped themselves from making a defense. Under the undisputed facts of this case there was an estoppel. Generally speaking, "estoppel is a bar which precludes a person from denying or asserting anything to the contrary of that which has, in contemplation of law, been established as the truth, either by the acts of judicial or legislative officers or by his own deed or representations, either express or implied." 19 Am. Jur., Estoppel, §2.

"As the matter is expressed in 19 Am. Jur., Estoppel, §42, 'The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.'" 44 A.L.R. 2d 199.

It is essential that the representation was intended by the party making it to be acted upon by the other, or made under such circumstances that the other had the right to believe that it was so intended. It is also essential that the party change his position as a result of the representation made to him. *Ervin v. Pittsburgh*, 339 Pa. 241, 250, 14 A. 2d 297. All of these essentials have occurred in this case.

In this Commonwealth the doctrine of estoppel is firmly established: *Robertson v. Hay*, 91 Pa. 242, 246; *Hutchison v. Gill*, 91 Pa. 253; *Hayes's Appeal*, 195 Pa. 177, 45 A. 1007; *Fort Pitt Real Estate Co. v. Schaefer*, 96 Pa. Superior Ct. 497.

We cannot agree with the conclusion of the court below that the case of *Standard Furnace Co. v. Roth*, 102 Pa. Superior Ct. 341, 156 A. 600, is controlling under the facts of this case. The note in the present case was clearly given *for the purpose of raising money* and the note in the *Standard Furnace* case was not. Judge

GAWTHROP recognized this distinction in the following language at pages 344 and 345 of the opinion: "The first contention made in behalf of appellant is that defendants are estopped, by their certificate of no defense, from setting up defenses against appellant. It is urged that the case is within the rule laid down in Robertson v. Hay, 91 Pa. 242, and Hutchison v. Gill, Ibid 253, and followed by us in Fort Pitt Real Estate Co. v. Schaefer, 96 Pa. Superior Ct. 497, that where a party executes a bond and mortgage and gives therewith a certificate of no defense and places these instruments in the hands of an agent for the purpose of raising money, he cannot defend against a purchaser of the mortgage for value without notice. This rule has never been applied except in cases in which the purpose of the obligation which the certificate of no defense accompanied was to raise money by the sale of it for the benefit of the original obligor." Furthermore, in the *Standard Furnace* case the Court emphasized the fact that the plaintiff became the assignee of the note solely by assignment to it of the contract which the note accompanied and for the completion of which contract it therefore became liable. Under the facts of the present case there was no liability upon the bank to complete the contract. It was merely a lender to the defendants. If the contract was improperly performed, that was a matter solely between the defendants and the contractor. While there is some split in authority in other states on the question here involved,[1] we believe it to be highly inequitable to allow the debtor to later assert a defense which he declared he did not have. The court below placed great emphasis upon the fact that in the second part of the completion certificate, hereinbefore quoted, General Distributing Company,

---

[1] See Annotation, 44 A.L.R. 2d 196.

the contractor, "for the purpose of inducing the payment of the proceeds of this loan" warranted that the work had been satisfactorily completed and then agreed that if the representation proved to be incorrect, it would repurchase the note from the financial institution. The fact is, however, that the loan was being made by the bank to the obligors and that they were in a position to know whether the work had been satisfactorily completed. They lived in the house where the furnace had been installed. The time involved was February 1, the middle of the winter. The bank had every right to assume that the obligors had had the opportunity to test the new heating system and it had a right to rely upon their representation that the work had been satisfactorily done. It is also argued that the bank will suffer no loss because of the agreement of the contractor to repurchase the note from the bank. Before the bank could enforce this obligation, it probably would be necessary for it to institute an action at law against the contractor. This would involve attorneys' fees and other costs as well as the loss of time, which would not be compensated for in the suit. Furthermore, it would be necessary for the bank to prove facts which were peculiarly within the possession of the obligors and, last but not least, much would depend upon the solvency of the contractor. It would be better to compel the obligors to maintain the action directly against the contractor. They too may be made whole if the contractor has breached its contract and remains solvent.

Order reversed.