Remmel et al. *v.* Gallagher, Appellant, et al.

Argued June 10, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Roger N. Nanovic*, with him *Heimbach and Nanovic*, for appellant.

*Frank D. Llewellyn*, with him *Daniel P. Dougherty*, for appellees.

OPINION BY WRIGHT, J., July 3, 1959:

Ruth Remmel and her husband, Bertine Remmel, instituted suit in trespass against Bernard A. Gallagher to recover for injuries suffered by the wife-plaintiff as the result of a fall. The Borough of East Mauch Chunk, now Borough of Jim Thorpe, was joined as additional defendant. The trial resulted in verdicts in favor of plaintiffs against the original defendant. A motion by the original defendant for judgment n.o.v. was dismissed, and judgments were entered on the verdicts. These appeals followed. The factual situation is set forth in the following stipulation of counsel:

"Appellant, Bernard A. Gallagher, leased from the Borough of East Mauch Chunk, now Borough of Jim Thorpe, its municipal park. The lease agreement, a copy of which is made 'Exhibit A' hereto, gave to appellant exclusive control of one certain area and reserved to the general public a right of joint user in the remaining area, wherein were the walks and playgrounds. Bingo games were operated by appellant in one of the buildings in the area solely controlled by him. Subsequent to the date of the lease, the appellant, with his own money, constructed a concrete walk from the building wherein the games were conducted, across the area where the public had a right of user, to Fern Street. This walk was of a width of 30 inches and a length of 250 feet. Midway of its length and within the area shared with the public, the walk turned from its original line of travel thirty to thirty-five degrees to a line of new direction. At the point where the walk turned, and for a distance of 16 inches backward toward the building, and forward from said point in its new direction toward Fern Street, for a distance of 8 feet, the walk was elevated 6 inches above the general level of the ground.

"At the conclusion of the bingo game, plaintiff entered upon this walk, and while proceeding toward Fern Street and without knowledge of the turn in the walk, stepped off the walk at the point of its turn and was spun about by the drop to the lower level and fell to the ground, sustaining a dislocated elbow and other injuries. The only other route open to plaintiff for leaving the vicinity of the bingo game was by 10th Street, the route taken by busses and automobiles, but this street had no sidewalks on either side and plaintiff would have been compelled to walk on the edge of the street with her back to the rushing oncoming traffic. 10th Street has the usual light standards, but

there is no evidence that these lights were burning that night. The accident happened on November 10, 1953 at about 10:00 p.m. The route taken by plaintiff, the concrete walk, was lighted at the point where plaintiff entered and for some distance beyond by the illumination issuing from appellant's home, but beyond that and at the place of the accident it was completely dark.

"There is no evidence that Bernard A. Gallagher or his employees maintained the walk after its construction. There is evidence that a Park Commission, made up of volunteer workers, did maintenance work about the grounds and the walk in question, usually from April through September and sometimes October while the park was used by children and the public generally. Materials for grading, etc., were paid from funds appropriated annually by the borough (and seemingly, the school district . . .) to the Park Commission, but school district) of the work done or to be done by the there is no evidence of supervision by the borough (or Park Commission, either by its members acting as a body or individually, or by its employees. There were times when permission was sought of Bernard A. Gallagher by the Park Commission for certain work done by it in the area between Fern Street and the building where bingo was held, which was the area within which the accident occurred . . . On occasions, the borough truck and employees were used by the Park Commission for cleaning and hauling".

In the lower court the sole question argued by appellant was whether or not he owed any legal duty to the plaintiff at the point where the accident took place. He here attempts to present an additional question, namely, did the wife-appellee "establish a prima facie cause of action clear from contributory negligence on her own part". While we are of the opinion that the trial judge did not err in submitting the issue of con-

tributory negligence to the jury, we do not propose to discuss this question in view of the well-settled rule that matters not properly raised in the court below may not be invoked on appeal. See *Guerra v. Galatic,* 185 Pa. Superior Ct. 385, 137 A. 2d 866; *Bittner v. McGrath,* 186 Pa. Superior Ct. 477, 142 A. 2d 323.

Appellant's remaining contention is thus stated: "May a tenant be held liable for injuries caused on leased premises when the terms of the lease give the tenant no more than the right to use the premises jointly with others, and deny to him the right to control of the premises"? The pertinent portion of the lease is set forth in the footnote.[1]

Appellant relies primarily on two cases. He first cites *Weigand v. American Stores Co.,* 346 Pa. 253, 29 A. 2d 484, in which the plaintiff was injured at a point where a private driveway crossed a sidewalk. Suit was instituted against American Stores Company, the City of Philadelphia, and others. The lower court entered judgment in favor of American Stores Company, and the City appealed. The question involved was whether American Stores Company had exclusive use of the driveway or used it in common with the landlord and other tenants. In affirming the judgment entered below, the Supreme Court said: "It has been held that where an owner is out of possession because of a lease of an entire property, his liability for repair of sidewalks ceases and the tenant is liable; but where the

---

[1] "First. The said lessor demises and lets unto the lessee, his heirs and assigns, for his exclusive use, all of the buildings and structures now erected or hereafter during the term hereof to be erected on both of said two tracts, and for his exclusive use the fenced-in area of the last-named tract, above, and for his joint use all of the areas comprising the two above-mentioned tracts with the general public and the latter to such extent as is reasonably necessary and convenient for the enjoyment and accommodation of patronage in and about the said buildings and structures . . ."

premises are let to several tenants each occupying different portions but all enjoying or using certain portions in common, the landlord is in control of and is responsible for the condition of the sidewalk in front of the portion of the premises used in common". Appellant also cites *Williams v. Wolf*, 169 Pa. Superior Ct. 628, 84 A. 2d 215, in which the plaintiff sued Wolf and Ryman for injuries sustained on premises which he averred were controlled by each. Ryman was the lessee of a storeroom, on one side of which he sold vegetables and produce. He sub-leased the other side to Wolf for a meat and grocery market. Plaintiff was injured in the aisle between. The jury found against both defendants, but judgment n.o.v. was entered for Wolf. In affirming we said: "As to third parties, liability for injuries rests upon the party who has possession and control of the area in which the injury occurred . . . Obviously, Wolf did not have sole possession or control of the aisle, for it was used also by Ryman's customers".

We are not in agreement with appellant's contention that these cases rule the somewhat unique situation presented by the instant appeal. While it is apparent that appellant did not have exclusive control of the area wherein the accident occurred, there is an additional factor which must be considered. When appellant on his own initiative constructed a concrete walk in that portion of the premises occupied in common with the general public, he assumed the burden of building and maintaining it in a proper manner. In the words of President Judge McCready: "The evidence in this case is to the effect that the lessee constructed a sidewalk in the area to be used jointly with the public and primarily for the use of his patrons, going to and from the building which he had leased from Borough of East Mauch Chunk, now Borough of Jim

Thorpe. He had absolute and exclusive control over the construction of this sidewalk and certainly he had a duty to third persons to see that during the period of construction the sidewalk was safely guarded so as to prevent injuries to third persons, and he owed third persons the duty to construct it in a safe manner to prevent injuries to third persons. It cannot be said that the landlord was in control of the construction of this sidewalk as the record is absolutely devoid of such evidence, and if it was the duty of original defendant to safeguard injuries to third persons during its construction certainly that duty did not terminate upon completion of the construction of the sidewalk, but it remained the duty upon the part of original defendant to maintain the sidewalk in such a condition that it would prevent injuries to third persons".

The controlling principle is set forth in Trickett on the Law of Landlord and Tenant as follows (page 535) : "If a dangerous condition is created by the tenant or is permitted to exist by the tenant, the mere fact of control by the landlord will not relieve the tenant of his responsibility nor will it impose liability on the landlord". This is in accord with the rule set forth in Section 364 of the Restatement of Torts as follows: "A possessor of land is subject to liability for bodily harm caused to others outside the land by a structure or other artificial condition thereon, which the possessor realizes or should realize as involving unreasonable risk of such harm, if (a) the possessor has created the condition . . ." In the comment under this section it is said: "The rule stated in this section relates only to structures and other artificial conditions which as and when created involve unreasonable risk of bodily harm to persons outside the land because of their plan, construction, location or otherwise". The place "outside the land" is termed a neutral place, defined in the

comment under Section 371 as "the place is one in which both the person who does the act and the person who sustains bodily harm thereby have an equal right or privilege or absence of right or privilege to be. Thus, a highway, public hall or other public place is a neutral place since normally any two persons have the same privilege of using it".

Appellant argues that the lease contains no covenant for the maintenance and care by him of anything other than the buildings and structures on the leased premises. He also argues that the Park Commission, made up of volunteer workers, occasionally filled in depressions along the walk. Neither circumstance is sufficient to relieve appellant from liability. The absence of a covenant to repair a structure not in existence at the time the lease was executed cannot serve to relieve appellant from responsibility for the subsequent creation and maintenance of a dangerous condition. As to the work done by the volunteer workers, it must be repeated that the walk was constructed by appellant on his own initiative, without any official authorization of or adoption by the Borough. Maintenance work performed by volunteers cannot relieve appellant from liability for a dangerous condition which he himself created.

Judgments affirmed.