## Cheltenham National Bank *v.* Snelling, Appellant.

Argued June 14, 1974. Before WATKINS, P. J., JA-COBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*J. Raymond Munholland,* with him *Bluestein & Prusky,* for appellant.

*John W. Lauffer,* with him *Harry C. Barbin,* and *Barbin, Lauffer & O'Connell,* for appellee.

OPINION BY HOFFMAN, J., September 23, 1974:

This appeal is from an order of the Court of Common Pleas of Montgomery County dismissing appellant's

petition to open and set aside a confessed judgment. We must determine whether a clause allowing judgment to be confessed "at any time" renders the instrument nonnegotiable; if so, we must determine whether principles of equitable estoppel preclude the appellant from asserting defenses against the appellee, the present holder of the instrument.

The complex facts of this case may be summarized as follows: On August 14, 1969, Goodway Copy Centers, Inc. ("Goodway") and appellant entered into a franchise arrangement whereby Goodway promised to locate, establish, equip and manage 100 copy centers within a period of seven years. In return, appellant agreed to purchase the centers as completed. Shortly thereafter, appellant transferred all his right in this venture to International Development Corp. ("IDC"), of which appellant was the sole shareholder. Goodway was represented in these negotiations by Mr. Donald Wolk.

In December, 1969, Mr. Wolk applied to Cheltenham National Bank ("Cheltenham") for a loan. Appellant did not participate in any negotiations. Appellant testified that Mr. Wolk told him that Cheltenham would require a promissory note as a prerequisite to granting the loan. On February 27, 1970, appellant executed a demand note to the order of Goodway in the amount of $150,000.[1]

Cheltenham was aware that the purpose of the loan was to enable Goodway to purchase five copy centers. Cheltenham never saw the master agreement between appellant and Goodway but did possess a copy of Goodway's prospectus and appellant's financial statement.

---

[1] Under the Uniform Commercial Code, "Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated." 12A P.S. §3-108. A demand note is due and payable immediately at the option of the holder. *Master Homecraft Co. v. Zimmerman*, 208 Pa. Superior Ct. 401, 222 A. 2d 440 (1966).

On March 24, 1970, Goodway assigned appellant's note to Cheltenham and the bank approved the loan application. $132,000 was deposited into a Goodway account and $18,000 was deposited into accounts held by IDC.

Appellant paid the interest on the loan for the first year. In March, 1971, Cheltenham demanded that Goodway make a principal payment on the loan, and on July 20, 1971, made the same demand of appellant. In late November, 1971, there was a meeting attended by appellant, Mr. Wolk, and Mr. Monroe Long, President of Cheltenham. Mr. Long testified that a repayment schedule was agreed to at that meeting. Appellant's testimony is in conflict, but a letter from appellant to Mr. Long, dated December 15, 1971, states: "I feel confident that a substantial payment can be made sometime prior to the end of December." In March, 1972, appellant pledged almost 19,000 shares of Snelling & Snelling stock to Cheltenham as collateral. No payments of principal were ever made.

Eventually, Goodway sold all of its business other than the venture with appellant to another firm. The completed centers that appellant had purchased from Goodway during the interim were closed by an Internal Revenue Service levy. In August, 1972, appellant filed suit against Goodway in Federal District Court. On April 6, 1973, Cheltenham confessed judgment on the promissory note assigned to it by Goodway. On May 16, 1973, appellant filed a Petition to Open Judgment. Appellee filed an Answer to this Petition and extensive depositions were taken and transcribed. On December 31, 1973, the lower court heard oral arguments. On the basis of the depositions, briefs, and argument, the court denied appellant's Petition to Open Judgment on the grounds that Cheltenham was the holder in due course of a negotiable instrument and alternatively, "[e]ven if the plaintiff were not a holder in due course of the note, by reason of defendant's conduct and actions he

has estopped himself from asserting any defenses he may have as to Goodway Copy Centers, Inc. against this plaintiff." This appeal is taken from the denial of said petition.

In its Petition to Open and Set Aside Confessed Judgment, appellant asserts that Goodway procured the Master Agreement by fraudulent misrepresentations and that Goodway was in breach of said agreement. These defenses are "personal" and will not prevail against a holder in due course.[2] Appellant contends, however, that Cheltenham cannot be a holder in due course because the instrument assigned to it contained a clause authorizing confession of judgment "at any time", and was therefore a nonnegotiable note. Thus, appellant claims that Cheltenham is merely an assignee whose rights rise no higher than those of its assignor.

The Uniform Commercial Code, §3-112, provides that "(1) the negotiability of an instrument is not affected by . . . (d) a term authorizing a confession of judgment on the instrument *if it is not paid when due.*" (Emphasis added). Thus, a confession of judgment clause is authorized by the Code *only* if the instrument is not paid when due. If the clause allows judgment to be confessed at a time prior to a default, the clause renders the instrument nonnegotiable. *Funds for Business Growth, Inc. v. Maraldo,* 443 Pa. 281, 278 A. 2d 922 (1971), involved a confession of judgment clause in a nonnegotiable note. The Court stated at 283: "Appellee had recorded the note on January 20, 1961, immediately after its execution on January 19, 1961, so that judg-

---

[2] Under 12A P.S. §3-305, a holder in due course takes the instrument free from all "personal" defenses of any party to the instrument with whom he has not dealt, but takes the instrument subject to five specifically delineated "real" defenses. 12A P.S. §3-306 provides that if one is not a holder in due course, he takes the instrument subject to, *inter alia,* all contract defenses and the defenses of want or failure of consideration.

ment was confessed against all parties prior to any default.* . . . *Section 3-112(1)(d) (12A PS) provides that negotiability is not affected by a term in the instrument that permits confession of judgment if it is not paid when due. This has been held to mean that a note which authorizes confession of judgment at any time before or after maturity, as is the case here, is a nonnegotiable instrument." The instrument in question provides in pertinent part: "And to secure the payment of said amount we hereby authorize, . . . any Attorney of any Court of Record to appear for us in such Court, . . . *at any time* before or after maturity and confess a judgment . . . ." (Emphasis added).

Appellee argues that the instrument is negotiable because it is a demand note and is thus immediately due and payable after its making. Appellee asserts, therefore, that the words "before maturity" are more surplusage and have no effect on negotiability. However, the crucial language in the instrument is the words "at any time." The significance of these words is that confession of judgment is authorized whether or not a default has occurred. Under appellee's interpretation, Cheltenham could have confessed judgment immediately upon receiving the instrument without ever demanding payment.[3] Holding the note negotiable under this interpretation is at odds with both the language of §3-112(1)(d) and applicable precedent.

In *Smith v. Lenchner*, 204 Pa. Superior Ct. 500, 205 A. 2d 626 (1964), this Court held that a demand note having a confession of judgment clause authorizing confession at any time was nonnegotiable: "Prior to the enactment of the Code, a note containing a warrant of attorney to confess judgment *at any time* was held to

---

[3] The official comment to §3-112(1)(d) states: "The use of judgment notes is confined to two or three states, and in others the judgment clauses are made illegal or ineffective either by special statutes or by decision." Thus, close judicial scrutiny is essential.

be a nonnegotiable instrument . . . . This rule was applied to a demand note . . . . The same result has been reached in cases subsequent to the enactment of the Code." 204 Pa. Superior Ct. at 505. Under the law of this Commonwealth, the note assigned to Cheltenham was nonnegotiable and Cheltenham took it subject to any defenses appellant could assert against Goodway.

In order to successfully petition to open a confessed judgment, one must act promptly and aver a meritorious defense, *Wenger v. Ziegler*, 424 Pa. 268, 226 A. 2d 653 (1967); however, "[a] petition to open judgment is addressed to the sound discretion of the court and is an appeal to the court's equitable powers." *Wenger*, supra, at 273. Courts have always recognized that equitable estoppel may bar a meritorious defense even in contract-assignment cases. See, e.g., *Northwestern National Bank v. Commonwealth*, 345 Pa. 192, 27 A. 2d 20 (1942). Therefore, even though the note is nonnegotiable, if the facts warrant an equitable estoppel, appellant is precluded from asserting defenses against an assignee.

The essential elements of an equitable estoppel as related to the party claiming the estoppel are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. *United States National Bank in Johnstown v. Drabish*, 187 Pa. Superior Ct. 169, 144 A. 2d 640 (1958).

The record reveals that Cheltenham was unaware at the time it assumed the note that Goodway may have procured its contract with appellant by means of fraudulent misrepresentations or that Goodway may have been in breach of contract. Cheltenham was merely a lender who assumed a promissory note in return for approving a loan; it was not a *contract* assignee. In fact,

Cheltenham never saw the contract between appellant and Goodway until after judgment had been confessed. It is true that Cheltenham was aware of the purpose of the loan and knew that an arrangement between Goodway and appellant existed. §3-304(4)(b) of the Code provides, however, that: "(4) Knowledge of the following facts does not of itself give the purchaser notice of a defense or claim . . . (b) that it was issued or negotiated in return for an executory promise or *accompanied by a separate agreement,* unless the purchaser has notice that a defense or claim has arisen from the same terms thereof." (Emphasis added). There was no reason for Cheltenham to be put on notice of any defenses from the mere fact of the separate agreement. The Bank had a copy of Goodway's prospectus and a copy of appellant's financial statement. Cheltenham was also aware of Mr. Snelling's personal reputation in the business community. On that basis, consistent with its policies, Cheltenham loaned Goodway and IDC $150,000 and received appellant's promissory note in return.

The second element of equitable estoppel is reliance. The facts show that Cheltenham began demanding principal payments as early as March, 1971. Letters from appellant to Cheltenham dated August 4, 1971, and December 15, 1971, contain promises from appellant to institute a schedule in order to repay the loan in full.[4]

---

[4] On August 4, 1971, appellant wrote to Mr. Long:

"This will acknowledge receipt of your recent letter concerning the $150,000 loan to International Development Corporation.

"We have been remiss in setting up a definite repayment plan covering the reduction of the principal, and I appreciate your consideration and understanding in this matter.

"*We will institute, beginning with the month of August, a regular repayment schedule which will continue on a monthly basis until such time as the entire loan is repaid.* This amount will fluctuate from time to time depending on the availability of funds at that particular time." (Emphasis added).

Cheltenham relied on these letters to forebear from confessing judgment at those times. The March, 1972, pledge of Snelling & Snelling stock induced further reliance on the part of Cheltenham. The Bank could reasonably view appellant's conduct as indicative of a bona fide intent to repay.

In *United States National Bank in Johnstown v. Drabish,* supra, a petition to open judgment was denied. The facts presented in this case are similar: the note was given for the purpose of raising money; the bank was only a lender and not a contract assignee; and the bank was unaware of any possible defenses that the maker could assert against the original holder of the instrument. These facts distinguish the present case from those decisions which granted petitions to open judgment. For example, in *Fidelity Trust Co. v. Gardiner,* 191 Pa. Superior Ct. 17, 155 A. 2d 405 (1959), the entire factual situation was permeated with fraud. The appellant had been dealing with an imposter and there was sufficient evidence to put the bank-assignee on notice of that fact. See also, *Bittner v. McGrath,* 186 Pa. Superior Ct. 477, 142 A. 2d 323 (1958) (Plaintiff clearly aware of the existence of defenses against his assignor); *Standard Furnace Co., Inc. v. Roth,* 102 Pa. Superior Ct. 341, 156 A. 600 (1931) (Bank a contract assignee as well as a lender). There are no circumstances in the present case which would have imposed a duty on Cheltenham to make further inquiries.

---

The December 15, 1971 letter states in pertinent part:

"As a follow-up to our meeting of several weeks ago between yourself, Mr. Wolk and I, at which time we felt strongly that some type of payment could be made on the principal on the outstanding loan to International Development Corporation . . . .

"As the situation now exists, *I feel confident that a substantial payment can be made sometime prior to the end of December.* While this deviates somewhat from our original commitment, I would feel that you would be in a position to go along with this slight delay of several weeks." (Emphasis added).

Cheltenham waited more than three years from the time it obtained the note until it confessed judgment. This delay has resulted in a prejudicial change in Cheltenham's position. At the time judgment was finally confessed, Goodway had sold all of its assets, IDC was virtually inactive, and the Snelling & Snelling stock pledged as collateral was considerably reduced in value. The difficulty of obtaining repayment is self-evident from the state of affairs existing at the time judgment was confessed.

We hold that the note in question is nonnegotiable, but that appellant is barred by principles of equitable estoppel from asserting any defenses he may have. Therefore, the order of the court below is affirmed.

JACOBS, J., concurs in the result.