Canter *v.* Canter, et ux., Appellants.

348

Argued September 9, 1975. Before Watkins, P. J., Jacobs, Hoffman, Cercone, Price, Van der Voort, and Spaeth, JJ.

*Sue N. Lang,* with her *Williams, Glantz & Schildt,* for appellants.

*Harry C. Liebman, Herman N. Silver,* and *Nathan Lavine,* submitted a brief for appellee.

Opinion by Cercone, J., February 2, 1976:

This appeal arises from the lower court's denial of appellants' petition to open three judgments based upon judgment notes executed in favor of their son, Norman, for $5,000 each. Although Norman was nominally the respondent to the petition to open, in fact his trustee in

bankruptcy was the substituted plaintiff on the judgments. The facts giving rise to this appeal, based upon the pleadings and the depositions of appellants, Morton and Sylvia Canter, are as follows:

In May or June of 1970, the business of Morton and Sylvia Canter, Canterbury Fabrics, Inc., was insolvent and apparently headed for bankruptcy. The Canters were also personally liable for some $34,000 to $44,000 of the business debts. At that time they backdated and executed simultaneously the three judgment notes in question in favor of their son, Norman. These notes bore no provision for attorney's collection fees, and the provisions for interest were stricken. Each note (dated October 15, 1965, November 2, 1966, and December 23, 1968, respectively) was formally witnessed by a different employee of Canterbury Fabrics. On July 14, 1970, appellants placed Canterbury Fabrics, Inc. in a Chapter 11 proceeding in bankruptcy. On August 3, 1970, the judgment notes were entered, by confession, with the Prothonotary of Bucks County by Sylvia Canter, who signed her son's name to the praecipes and affidavits of nonmilitary service. In September of 1970, Canterbury Fabrics, Inc. was adjudicated a bankrupt. The debts of the business for which the Canters were also liable have not been discharged, and the judgments based upon the notes from them to their son have remained on record.

In October of 1971, Norman Canter, the son, also filed a voluntary petition in personal bankruptcy; and, on May 9, 1973, a suggestion was entered in the instant actions noting the appointment of a trustee for the bankrupt estate of Norman Canter and notifying appellants of the trustee's appearance in the instant cases. On July 16, 1973, appellants filed their petition to open the judgments, almost three years after they were originally filed with the prothonotary. Although the trustee's answer alleged several grounds for denying the motion to open (including laches and "unclean hands"), the court below

350

rested its decision upon the fact that appellants' petition and motions to open were not timely filed given the circumstances of this case.[1]

It is apparently conceded by all that the $15,000, the amount of the three notes given to their son, upon which the judgments rest, was never received by Morton and Sylvia Canter, so that their propounded defense, "failure of consideration," is sound from that standpoint. However, the trustee contended before the lower court (apparently persuasively, from the tenor of the lower court's opinion) that the transaction involving the judgment notes was an attempt by the Canters to defraud the creditors of their business to whom they were also personally liable.

The Canters' incredible explanation was that the transaction was carried out at the behest of their son, who allegedly was acting on their behalf in negotiations with an *anonymous* lender. This anonymous person indicated a willingness to loan the Canters $15,000 (ostensibly interest free) if they complied with certain of his requests, which included the preparation, backdating and recording of the notes on behalf of their son. The Canters further claimed that the deal fell through when it was learned that their existing creditors would only agree to postpone the collection of their debts if they were indemnified by any new investor. Since, the Canters allege, the anonymous lender was not willing to make the loan on those conditions, the money was not forthcoming. Thereafter they allege that their son tore up the notes in his possession, and they believed nothing further remained to be done to absolve them of their obligation under the notes. Believing that, they failed to have the judgments removed from the record.

---

1. In determining whether the delay preceding the motion to open judgment is excessive, the court should consider all the circumstances of the case. See *Steigleman v. Sciotto*, 388 Pa. 113 (1957); *O'Connor v. Flick*, 271 Pa. 249 (1921).

In order to succeed in opening a judgment by confession, it is necessary to act promptly and allege a meritorious defense. *Cheltenham Nat'l. Bank v. Snelling*, 230 Pa. Superior Ct. 498, 504 (1974); *Ritchey v. Mars*, 227 Pa. Superior Ct. 33 (1974). Furthermore, petitions to open judgments lie within the equitable powers of the court. *Wenger v. Ziegler*, 424 Pa. 268 (1967); *Kilgallen v. Kutna*, 226 Pa. Superior Ct. 323 (1973); *Bucks County Bank & Trust Co. v. De Groot*, 226 Pa. Superior Ct. 419 (1973). Hence, the determination of the hearing court may not be reversed on appeal unless a clear abuse of discretion is shown. *Ritchey v. Mars*, supra.

In the instant case, we are not persuaded that the court abused its discretion when it found that the appellants had failed to act promptly in waiting nearly three years before filing their petition to open. Although appellants cite cases where the granting of motions to open judgments were affirmed on appeal, despite delays of more than three years,[2] those cases differ markedly on their facts, and certainly involve situations more likely to appeal to the conscience of the court. In any event, those cases do not stand for the proposition that had the lower court therein refused to open judgment, its decision would have been reversed on appeal. But see *Funds for Business Growth, Inc. v. Maraldo*, 443 Pa. 281 (1971).

In this case, the judgments were entered upon praecipe by Sylvia Canter, with the consent of her husband, and at the behest of her son. The judgment notes were prepared in favor of their son, and without consideration, at a time when the Canters' business was insolvent and on the brink of bankruptcy. Any one of these circumstances *alone* would presumptively indicate a fraudulent conveyance to preserve their property from execution by

---

2. *Jamestown Banking Co. v. Conneaut Lake Dock & Dredge Co.*, 339 Pa. 26 (1940); *Cronauer v. Bayer*, 140 Pa. Superior Ct. 91 (1940).

their creditors. See 10 Standard Pennsylvania Practice §§235-37 (Rev. ed. 1963), and the cases cited therein. Together, they virtually compel that conclusion, especially in light of the Canters' backdating the notes and their patently incredible explanation of the reasons for their so doing. It has long been established that, when such indications of fraud appear, the parties to the fraud are not entitled to relief *inter se. Dillen v. Dillen,* 221 Pa. 435 (1908) ; *Blystone v. Blystone,* 51 Pa. 373 (1865). Furthermore, "[a] long delay after knowledge of all the facts casts doubt upon the good faith of the defense and gives weight and probability to the evidence adduced to rebut it." 7 Standard Pennsylvania Practice §79 (Rev. ed. 1961). In this context, and coupled with the fact that creditors of the bankrupt, Norman Canter, may also have been misled by the existence of $15,000 worth of judgments in his favor, we cannot find that the lower court abused its discretion in refusing to open these judgments after three years.[3]

Order is affirmed.

---

3. We do not conceive that the decision in this case necessarily affects the priorities of the creditors of Norman Canter *vis a vis* the creditors of Morton and Sylvia Canter with respect to the property of the latter. The decision in this case does not rest upon whether the judgments are "voidable", but rather on whether they are now voidable by the Canters. Of course, Judge SPAETH's concern for the remedies of the defrauded creditors of the elder Canters is shared by all of us. Nevertheless, a variety of factors militate against our reaching the result Judge SPAETH suggests.

First, those arguments were not raised in this appeal, so that our raising them as grounds for reversing the order of the lower court would be wholly *sua sponte.* Creating grounds or theories for reversal of the lower court is a power we do not possess. See *Wiegand v. Wiegand,* 461 Pa. 482 (1975). Certainly, we should not hold that the lower court abused its discretion in failing to consider issues and parties not before it on a motion to open. In resolving the motion to open the court needed only to ask whether the petition was timely filed and whether it set forth a meritorious defense. In addition to those questions Judge SPAETH would require

CONCURRING AND DISSENTING OPINION BY SPAETH, J.:

I agree with the majority that appellants should not be permitted first to confess judgment fraudulently against themselves and then, three years later, to petition successfully to open the judgment. Nevertheless, I am troubled by the majority's disposition of this case. Appellee participated equally with appellants in the execution of the three backdated judgment notes and is as much a party to the fraud committed against appellants' creditors as are appellants. The majority, however, awards appellee's bankrupt estate an asset to which appellee has no right, and does so at the expense of the creditors who were the intended victims of the fraudulent conveyance. In my view, the better disposition of this case would be to reverse the order of the lower court, grant the petition to open the judgment, and proceed to trial. This would permit appellants' creditors to inter-

the court to ask whether there are parties not of record who *may* be adversely affected by the denial of the motion to open. For failing to consider that question Judge SPAETH would hold that the lower court abused its discretion.

Second, it behooved Morton and Sylvia Canter to implead their general creditors, or at least notify them of the pending litigation. Their failure to do so may now mean that they will not only have to pay the $15,000 in judgment notes, but also pay their general creditors—in a sense, they will be the victims of a double recovery. By notifying their general creditors they might have avoided that result.

Third, assuming the Canters' assets are insufficient to cover both sets of debts, the real issue would become the priorities of the various creditors. Rather than attempt to resolve a complex question like that, *sua sponte*, on a motion to open, the better result is to require the general creditors of Morton and Sylvia Canter to sue on their debts, presumably forcing the Canters into bankruptcy. Then, the trustees of Norman Canter and Morton and Sylvia Canter may do battle over priorities. In that proceeding the precise issue which disturbs Judge SPAETH will be the focus of the litigation. That court at least will have the benefit of an adequate record and the briefs and arguments of counsel.

vene in the proceeding to have their claims adjudicated with those of appellants and appellee.

## I.

I do not question the majority's conclusion that the circumstances surrounding appellants' transaction with appellee indicate an attempt to defraud appellants' business creditors by concealing personal assets from those creditors. Nor do I question the traditional reluctance of our courts to provide relief to a judgment debtor who has fraudulently confessed a judgment. "A court of equity will not come to the aid of one who, in the practice of one fraud, has become the victim of another, but will, as was said in *Blystone v. Blystone,* 51 Pa. 373, regard one who has been cheated by his own machinery as having cheated himself." *Metzger v. Metzger,* 338 Pa. 564, 571, 14 A.2d 285, 289 (1940). *See also Dillen v. Dillen,* 221 Pa. 435, 70 A. 806 (1908). Here, the three judgment notes were prepared and backdated at a time when appellants' business was insolvent and when appellants were personally liable for over $34,000.00 in business debts. Appellee paid no consideration for the notes and, as appellants' son, enjoyed their confidence. As the majority says, "[a]ny one of these circumstances *alone* would presumptively indicate a fraudulent conveyance to preserve their property from execution by their creditors. . . . Together, they virtually compel that conclusion. . . ." Majority opinion at 351-352.[1] *See also First National Bank of Marietta v. Hoffines,* 429 Pa. 109, 239 A.2d 458 (1968) ; *Smith v. Arrell,* 388 Pa. 117, 130 A.2d 167 (1957) ; *Toff v. Vlahakis,* 380 Pa. 512, 112 A.2d 340 (1955).

---

1. This presumption is made explicit in Section 4 of the Uniform Fraudulent Conveyances Act, 39 P.S. §354, which provides:

"Every conveyance made and every obligation incurred by a person who is or will thereby be rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." 1921, May 21, P.L. 1045, No. 379, §4.

## II.

Had appellee not filed a voluntary petition in bankruptcy, I would have agreed with the majority that we should be guided by the equitable principles expressed in *Metzger v. Metzger, supra,* and affirm the order of the lower court.[2] I would have done this because, without the petition in bankruptcy, appellants' creditors might

---

2. In 1973, the rules for opening a confessed judgment were relaxed in favor of a petitioner who asserts a meritorious defense. Rule 2959 (e), Pa. R. C. P., 12 P.S. Appendix, provides:

"The court shall dispose of the rule on petition and answer, and on any testimony, depositions, admissions, and other evidence. The court for cause shown may stay proceedings on the petition insofar as it seeks to open the judgment pending disposition of the application to strike off the judgment. *If evidence is produced which in a jury trial would require the issues to be submitted to a jury, the court shall open the judgment.*" (Emphasis added.) Added June 27, 1969. Eff. Jan. 1, 1970. Amended Oct. 4, 1973. Eff. Dec. 1, 1973.

The explanatory comment to this rule says, in pertinent part:

"Historically, it has been the rule in Pennsylvania that the opening of a confessed judgment is a matter within the discretion of the common pleas court and the appellate courts will not reverse unless there has been an abuse of discretion. This requires the defendant to do *more than produce evidence which, if believed, would constitute a defense;* it places on him the burden of persuading the court to open the judgment. Dicta in both *Overmyer* [Overmyer v. Frick, 405 U.S. 174 (1972)] and *Swarb* [Swarb v. Lennox, 405 U.S. 191 (1972)] comment critically on this burden. . . . The amendment meets these criticisms by . . . stating specifically that if the defendant produces evidence, which in a jury trial would require the issues to be submitted to a jury, the court shall open the judgment."

Supreme Court of Pennsylvania, Civil Procedural Rules Committee, Explanatory Comment, Amendments to the Confession of Judgment Rules.

*See Wolgin v. Mickman,* 233 Pa. Superior Ct. 218, 222, 335 A.2d 824, 825-826 (1975).

Because the petition here was filed before the effective date of this new rule, I do not consider the rule applicable.

have availed themselves of one of a number of alternative remedies.

First, if the creditors had had notice of appellants' petition to open the judgments, they might have filed for leave to intervene during the pendency of the action as provided for in Pa. R. C. P. 2327.[3] *See generally Admiral Homes, Inc. v. Floto Management Corp.*, 397 Pa. 509, 156 A.2d 326 (1959); *Howell v. Franke*, 393 Pa. 440, 143 A.2d 10 (1958). I cannot tell from the briefs and record whether the creditors ever received such notice, or whether they decided for other reasons not to press their claims at this time.[4] It does appear that they did

---

*See* footnote 9, *infra.* Even if it were applicable, I would reach the same conclusions and recommend the same procedures as those set forth in this opinion, for I would find it difficult to accept appellants' defense as meritorious.

3. Pa. R. C. P. 2327 provides in relevant part:

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules, if . . . 4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action." Adopted June 7, 1940, eff. Feb. 3, 1941.

4. The deposition of appellant Morton Canter indicates that the creditors have exercised unusual forbearance in this case. Appellant responded to questioning as follows:

"Q. All right, and what did you do about those particular notes?

A. Nothing. We have no means to pay them back, so we're not doing anything about it.

. . . .

Q. Have you discussed with all of them [the creditors]? Are they all aware of your present circumstance and willing to cooperate in permitting you time to pay off their debts?

A. Well, they haven't signified in so many words, but they haven't bothered us.

Q. But their judgments are recorded, is that correct?

A. The Trenton Trust has recorded a judgment against us." Deposition of Morton L. Canter, at 40-41.

not attempt to intervene. Second, the creditors might have petitioned to have the judgment set aside and its execution stayed, as provided in 12 P.S. §911.[5] And third, they might have proceeded under Section 9 of the Uniform Fraudulent Conveyances Act, Act of May 21, 1921, P.L. 1045, No. 379, 39 P.S. §359. Under that section, a creditor may either file a bill in equity to have the conveyance invalidated, or may disregard the conveyance entirely and proceed directly to execution.[6] *See Simon v. Sorrentino*, 145 Pa. Superior Ct. 364, 20 A.2d 805 (1941).

I assume that it is one of these remedies, or, perhaps, a suit in the district court by appellants' creditors against appellee's trustee in bankruptcy, that the majority has in mind when it states, Majority Opinion at 352, n.3, that "[t]he decision in this case does not rest upon whether the judgments are voidable, but rather on whether they are now voidable by the Canters."

---

5.  12 P.S. §911 provides in pertinent part:

"In any case in which a judgment has been . . . confessed . . . any creditor of the person or party against whom such judgment has been confessed shall have the right to apply . . . for a rule on the plaintiff in such execution to show cause why the validity of the judgment should not forthwith be inquired into and the same set aside . . . providing it is alleged in the petition for such rule that the creditor applying for the same has reason to believe that such judgment is invalid and fraudulent . . ."

6.  Section 9 provides:

"1)  Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

a)  Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

b)  disregard the conveyance, and attach or levy execution upon the property conveyed."

## III.

Here, however, appellee has filed a voluntary petition in bankruptcy and the trustee in bankruptcy has appeared. Because of the peculiar status of a trustee in bankruptcy, the remedies available to appellants' creditors may not be effective if the trustee is awarded the assets represented by the three judgment notes.

Section 70 (c) of the Bankruptcy Act, 11 U.S.C. §110 (c), vests the trustee in bankruptcy with all the rights of a judgment or lien creditor of the bankrupt party.[7] Federal decisions under the bankruptcy laws have held that the rights of the trustee as a judgment creditor of the bankrupt, with regard to the rights of other creditors, are to be determined by applying state law. *See In Re Rosenberg Iron and Metal Co.*, 343 F. 2d 527 (7th Cir. 1965) ; *In Re Dee's, Inc.*, 311 F. 2d 619 (3d Cir. 1962) ; *City of New York v. Johnson*, 137 F. 2d 163 (2d Cir. 1943); *In Re Regal Petroleum Products Co.*, 287 F. Supp. 458 (E.D. Pa. 1968), *aff'd*, 413 F. 2d 299 (3d Cir. 1969) Factors such as the type of creditor and the nature of his claim affect the setting of priorities as between the trustee and other creditors claiming against the bankrupt's estate.

---

7.  Section 70 (c) provides in relevant part:

"The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists." As amended, Sept. 25, 1962, P.L. 87-681, §§9, 10, 76 Stat. 571, 572; July 5, 1966, P.L. 89-495, §5, 80 Stat. 269.

In Pennsylvania, the courts have followed the long-established rule that a bona fide purchaser for value will be protected even though he takes from a fraudulent grantee. *See Cancilla v. Bondy,* 353 Pa. 249, 44 A.2d 586 (1945); *Lasser v. Philadelphia National Bank,* 321 Pa. 189, 183 A. 791 (1936) ; *Boyer v. Weimer,* 204 Pa. 295, 54 A. 21 (1902); *Keating v. Craig,* 13 D. & C. 2d 663, 106 P.L.J. 43 (1959). *See also* Section 9 of the Uniform Fraudulent Conveyances Act, *supra,* 39 P.S. §359, which limits the rights of creditors against those of a "purchaser for fair consideration." The issue presented, therefore, is whether, under state law, the trustee in bankruptcy, as a judgment creditor of the bankrupt appellee's estate, is to be considered a "purchaser for fair consideration", or indeed, is to be awarded priority against competing creditors on other grounds. In *In Re Dee's, Inc., supra,* which was a proceeding in which both the trustee of the transferor and the trustee of the transferee claimed certain assets, the court said:

"A subsequent transferee for value without notice of an outstanding equity or a defect in the title of the transferor, will take the transferred property free of any outstanding claim or equity. Dee's trustee is in the position of such a transferee." 311 F. 2d at 622.

*See also City of New York v. Johnson, supra; In Re Regal Petroleum Products Co., supra.*[8]

It appears to me, therefore, that if the judgments remain unopened, then under the applicable state law as it has been applied within the third circuit, appellants' creditors will probably have little success if they choose to litigate their claims in a federal forum, as they may

---

8. In other circuits, the trustee is not considered a good faith purchaser for value. *See, inter alia, In re Richards,* 455 F. 2d 281 (6th Cir. 1972); *In re Easy Living, Inc.,* 407 F.2d 142 (6th Cir. 1969). *But see In re Dail,* 257 F. Supp. 326 (E.D.N.C. 1966), where, under the applicable state law, the trustee was held to be a bona fide purchaser from the transferee.

do under the Bankruptcy Act. Thus, although the majority says that "[w]e do not in any way conceive that the decision in this case affects the priorities of the creditors of Norman Canter *vis a vis* the creditors of Morton and Sylvia Canter with respect to the property of the latter . . .", Majority Opinion, at 352, n.3, in fact, I submit, by refusing to open the judgments, the majority's decision may affect those priorities. I cannot agree that appellants' creditors' rights should be determined in so summary a manner. By opening the judgments so that the case might be tried, as I would provide, the issues touched upon in this opinion might be raised by the real parties in interest and resolved on the merits.

## IV.

I recognize that at the time of the inception of this action, the standard of review in confession of judgment cases was narrowly circumscribed.[9] Our courts have said that a petition to open judgment is addressed to the dis-

---

9. As indicated in footnote 2, *supra*, the older Pennsylvania rule, rather than the less burdensome requirements of amended Pa. R. C. P. 2959(e), must be applied to the present proceedings. Appellants filed their petition to open judgment on July 16, 1973. The amended rule, however, did not become effective until December 1, 1973. As we said in *Trinity Area School District v. Dickson*, 223 Pa. Superior Ct. 546, 551, 302 A.2d 481, 484 (1973):

"Pennsylvania Rule of Civil Procedure 152 provides that whenever a rule is amended, 'the new provision shall be construed as effective only from the date the amendment became effective.' Thus, procedural rule amendments do not apply to actions at law instituted prior to the effective date of the amendment; procedural rights are determined by the law in force when the action is initiated. Sussman v. Yaffee, 443 Pa. 12, 15, 275 A.2d 364 (1971); Schladensky v. Ellis, 442 Pa. 471, 474-475, 275 A.2d 663 (1971); Kilian v. Allegheny County Distributors, 409 Pa. 344, 350-351, 185 A.2d 517 (1962)."

It may be noted, however, that we have not been consistent in refusing to apply the amended rule retroactively. *See*, for example, *Joseph A. Puleo and Sons, Inc. v. Rossi*, 234 Pa. Superior Ct. 612,

cretion of the lower court, and is an appeal to the court's equitable powers. *Wenger v. Ziegler,* 424 Pa. 268, 278, 226 A.2d 653, 655 (1967) ; *Bucks County Bank and Trust Co. v. De Groot,* 226 Pa. Superior Ct. 419, 422, 313 A.2d 357, 359 (1973). Nevertheless, the lower court may be reversed for abuse of that discretion. *Ritchey v. Mars,* 227 Pa. Superior Ct. 33, 324 A.2d 513 (1974). "Generally, an appellate court will limit review of proceedings to open a judgment entered by confession . . . to ascertain whether the discretion of the court below was properly exercised and will reverse only if an abuse of discretion or manifest error is shown." *Funds for Business Growth, Inc. v. Maraldo,* 443 Pa. 281, 285, 278 A.2d 922, 924 (1971). Here, however, by denying the petition to open the confessed judgments, the lower court not only ratified the fraud perpetrated by appellee and appellants, but also failed to consider the effect of its decision upon the ability of appellants' creditors to recover, in any subsequent action, the substantial sums owed them. In my view, this was manifest error.

I would therefore reverse, open the judgments, and permit the case to be tried as Pa. R. C. P. 2960 provides. I would do so, however, with the proviso that appellants' creditors be notified of the impending proceedings so that they might petition to intervene. Should the creditors choose not to intervene after having been notified, I would permit the lower court to reinstate the

---

614, 340 A.2d 557, 558 (1975), in which petitions to open filed on January 15, 1974, were considered under the amended rule; *Cheltenham National Bank v. Snelling,* 230 Pa. Superior Ct. 498, 504, 326 A.2d 557, 560 (1974), where the old rule was applied to petitions filed May 16, 1973; *Ritchey v. Mars, supra,* 227 Pa. Superior Ct. at 36, n. 4, 324 A.2d at 515, n. 4, where the amended rule is discussed but the old rule applied. *But see Wolgin v. Mickman, supra,* at 222, 335 A.2d at 825-826, in which both the old rule and the amended rule are cited, with the amended rule being applied to petitions filed in February and June, 1973.

confessed judgments so that the trustee might proceed to execution on those judgments. A court may alter its own judgment to agree with the facts and to conform the judgment to its true intent. *Davis v. Commonwealth Trust Co.,* 335 Pa. 387, 390-391, 7 A.2d 3, 5 (1939). This disposition would undo the dishonesty of the original transaction, while still requiring appellants to bear the consequences of their fraud.

WATKINS, P.J., joins in this opinion.